LEHMAN ON BEHALF OF HER CHILDREN, LEHMAN ET AL.
*v.* LYCOMING COUNTY CHILDREN'S
SERVICES AGENCY

No. 80–2177.   Argued March 30, 1982—Decided June 30, 1982

POWELL, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, REHNQUIST, STEVENS, and O'CONNOR, JJ., joined. BLACK-MUN, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 516.

*Martin Guggenheim* argued the cause for petitioner. With him on the brief was *Burt Neuborne*.

*Charles F. Greevy III* argued the cause and filed a brief for respondent.

JUSTICE POWELL delivered the opinion of the Court.

The question presented is whether the habeas corpus statute, 28 U. S. C. § 2254, confers jurisdiction on the federal courts to consider collateral challenges to state-court judgments involuntarily terminating parental rights.

I

The facts of this case are described in detail in *In re William L.*, 477 Pa. 322, 383 A. 2d 1228, cert. denied *sub nom.*

*Lehman* v. *Lycoming County Children's Services*, 439 U. S. 880 (1978), the Pennsylvania Supreme Court decision terminating the parental rights of petitioner Marjorie Lehman with respect to three sons born in 1963, 1965, and 1969.[1] In 1971, Ms. Lehman discovered that she was pregnant again. Because of housing and other problems related to the care of her sons, Ms. Lehman voluntarily placed them in the legal custody of the Lycoming County Children's Services Agency, and it placed them in foster homes.

Although Ms. Lehman visited her sons monthly, she did not request their return until 1974. At that point, the Lycoming County Children's Services Agency initiated parental termination proceedings. In those proceedings, the Orphan's Court Division of the Lycoming County Court of Common Pleas heard testimony from Agency caseworkers, a psychologist, nutrition aides, petitioner, and the three sons.[2] The judge concluded: "[I]t is absolutely clear to the court that, by reason of her very limited social and intellectual development combined with her five-year separation from the children, the mother is incapable of providing minimal care, control and supervision for the three children. Her incapacity cannot and will not be remedied."[3] *In re Lehman*, Nos. 2986, 2987, and 2988, p. 4 (Ct. Common Pleas, Lycoming County, Pa., June 3, 1976).[4] The court therefore

---

[1] Petitioner has never been married. The fathers to these sons voluntarily have relinquished their parental rights in state-court proceedings.

[2] There was no evidence that any of the sons wanted to return to their mother. See Tr. 82, 117–118, 122–125, 127–129.

[3] It has now been over a decade since the sons were removed from the custody of their mother. Frank, the oldest, is now 18, and the case is moot with respect to him since he is free to seek adoption by anyone, including his natural mother. See Tr. of Oral Arg. 25–26. The other two sons, Bill and Mark, are now 12 and 16 respectively.

[4] The judge relied on the Pennsylvania statute which provides, in relevant part:

declared that petitioner's parental rights respecting the three sons were terminated.

The Pennsylvania Supreme Court affirmed the termination order based on "parental incapacity, which does not involve parental misconduct." *In re William L., supra,* at 331, 383 A. 2d, at 1232. It held that the legislature's power to protect the physical and emotional needs of children authorized termination in the absence of serious harm or risk of serious harm to the children and in the absence of parental misconduct. The court stressed that, "[i]n the instant cases, the basis for termination is several years of demonstrated parental incapacity . . . ." *Ibid.* It also held that the statute was not unconstitutionally vague either on its face or as applied.

Petitioner sought this Court's review in a petition for certiorari rather than by appeal.[5] We denied the petition. *Lehman* v. *Lycoming County Children's Services,* 439 U. S. 880 (1978). Petitioner then filed the instant proceeding on January 16, 1979, in the United States District Court for the Middle District of Pennsylvania, seeking a writ of habeas cor-

---

"The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

.         .         .         .         .

"(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa. Cons. Stat. § 2511(a) (1980).

[5] This decision appeared to have been a strategic one, making possible, in the event this Court did not grant plenary review, the filing of a habeas corpus petition in federal district court without any problem of res judicata on the federal issues as a result of this Court's summary affirmance or dismissal of the appeal for want of a substantial federal question. At oral argument, however, petitioner's lawyer also explained that he was confused as to whether he could appeal both the facial attack on the statute and the challenge to the statute as applied, and had therefore chosen the more conservative route of seeking a petition for a writ of certiorari on both issues. See Tr. Oral Arg. 21–22.

pus pursuant to 28 U. S. C. §§ 2241 and 2254. Petitioner requested (i) a declaration of the invalidity of the Pennsylvania statute under which her parental rights were terminated; (ii) a declaration that petitioner was the legal parent of the children; and (iii) an order releasing the children to her custody unless within 60 days an appropriate state court judicially determined that the best interest of the children required that temporary custody remain with the State.

The District Court dismissed the petition without a hearing. Relying primarily on *Sylvander* v. *New England Home for Little Wanderers*, 584 F. 2d 1103 (CA1 1978), the court concluded that "the custody maintained by the Respondent over the three Lehman children is not that type of custody to which the federal habeas corpus remedy may be addressed." *Lehman* v. *Lycoming County Children's Services Agency*, Civ. No. 79–65 (MD Pa. 1979), reprinted in App. to Pet. for Cert. 135a, 147a.

Sitting en banc, the Court of Appeals for the Third Circuit affirmed the District Court's order of dismissal by a divided vote of six to four. 648 F. 2d 135 (1981). No majority opinion was written. A plurality of four, in an opinion written by Judge Garth, concluded that "disputes of the nature addressed here and which essentially involve no more than the question of who shall raise a child to maturity, do not implicate the federal interest in personal liberty sufficiently to warrant the extension of federal habeas corpus." *Id.*, at 146. In support of this conclusion, Judge Garth reasoned that "[i]t is not the liberty interest of the children that is sought to be protected in such a case, but only the right of the particular parent to raise them." *Id.*, at 140 (footnote omitted).

A second plurality of four, in an opinion written by Judge Adams wrote that it "would appear to be both unwise and impolitic for the federal courts to uncover a whole new font of jurisdiction. . . ." *Id.*, at 151. He would have disposed of the case on the ground that Ms. Lehman did not have stand-

ing to assert a habeas corpus action on behalf of her children. See *id.*, at 151–155. This view was based on the conclusion that once a parent's rights have been terminated in a state proceeding, a parent is no longer presumed to represent the interest of the child. See *id.*, at 153–154.[6]

The question presented to this Court can be stated more fully as whether federal habeas corpus jurisdiction, under § 2254, may be invoked to challenge the constitutionality of a state statute under which a State has obtained custody of children and has terminated involuntarily the parental rights of their natural parent. As this is a question of importance not heretofore considered by this Court, and one over which the Circuits are/ divided,[7] we granted certiorari. 454 U. S. 813 (1981). We now affirm.

---

[6] Chief Judge Seitz filed a separate concurring opinion. He found the case "most difficult," noting that "the literal statutory requirements for exercise of section 2254 federal habeas corpus jurisdiction can be said to be satisfied." 648 F. 2d, at 155. But he nevertheless concurred in the result because habeas corpus has never been used to challenge state child-custody decisions, and "such a major departure from traditional uses of federal habeas corpus to challenge state-court judgments" should "await a congressional directive on the matter." *Id.*, at 156.

Judge Rosenn, joined by two other judges, dissented. He stressed that "[t]he total extinction of a familial relationship between children and their biological parents is the most drastic measure that a state can impose, short of criminal sanctions." *Id.*, at 163. Judge Gibbons also filed a dissenting opinion, arguing that there was federal subject-matter jurisdiction and that habeas corpus should be an available remedy because a decision terminating parental rights has ongoing effects. *Id.*, at 177.

[7] The federal courts have split on this issue. Only one court other than the Court of Appeals for the Third Circuit has addressed the question in a full opinion; in *Sylvander* v. *New England Home for Little Wanderers*, 584 F. 2d 1103 (1978), the Court of Appeals for the First Circuit held that habeas corpus could not be used to avoid the finality of prior state-court child-custody proceedings, with a rationale much like Judge Garth's in the instant case. Other federal courts have assumed—without full analysis—that habeas jurisdiction lies. See *Davis* v. *Page*, 640 F. 2d 599, 602 (CA5 1981) (en banc); *Rowell* v. *Oesterle*, 626 F. 2d 437 (CA5 1980).

## II

### A

Petitioner seeks habeas corpus collateral review by a federal court of the Pennsylvania decision. Her application was filed under 28 U. S. C. § 2254(a):

> "The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

Although the language of § 2254(a), especially in light of § 2241, suggests that habeas corpus is available only to challenge the convictions of prisoners actually in the physical custody of the State,[8] three modern cases have extended it to other situations involving challenges to state-court decisions.[9]

---

[8] See 28 U. S. C. § 2241 (empowering federal judges to grant such writs; subsection (c) provides that "[t]he writ of habeas corpus shall not extend to a *prisoner* unless . . .") (emphasis added); see also 28 U. S. C. § 2254(b) ("An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall . . . be granted unless [state remedies have not been exhausted or are not available, or there are] circumstances rendering such process ineffective to protect the rights of the *prisoner*") (emphasis added).

[9] When habeas corpus is made available by a federal court to challenge custody by *federal* entities, federalism concerns are not implicated. The only relevant question then is what federal remedy may be available. The grant of habeas relief in such instances—*e. g., Strait* v. *Laird*, 406 U. S. 341 (1972) (inactive Army Reserve member allowed to bring habeas petition to challenge his military obligation); *Brownell* v. *Tom We Shung*, 352 U. S. 180, 182–184 (1956) (alien allowed to use habeas to challenge his exclusion from the United States)—is not precedent for the use of federal habeas to challenge judgments of state courts. As Judge Garth noted in his decision below: "[T]he writ assumes even more profound implications when its operation cuts across the federal and state judicial systems. In this latter context, the writ empowers a single federal judge to overrule deter-

The first of these cases is *Jones* v. *Cunningham*, 371 U. S. 236 (1963), in which the Court allowed a parolee to challenge his conviction by a habeas petition. The Court considered the parolee in "custody" for purposes of § 2254(b) because "the custody and control of the Parole Board involve significant restraints on petitioner's liberty . . . which are in addition to those imposed by the State upon the public generally." 371 U. S., at 242. And in *Carafas* v. *LaVallee*, 391 U. S. 234 (1968), the Court allowed the writ in a challenge to a state-court judgment even though the prisoner, incarcerated at the time the writ was filed, had finished serving his sentence during the proceedings. The custody requirement had, of course, been met at the time the writ was filed, and the case was not moot because Carafas was subject to "'collateral consequences'" as a result of his conviction, *id.*, at 237, and "is suffering, and will continue to suffer, serious disabilities . . . ." *Id.*, at 239. Most recently, in *Hensley* v. *Municipal Court*, 411 U. S. 345 (1973), the Court allowed the writ to be used to challenge a state-court conviction even though the defendant had been released on his own recognizance after sentencing but prior to the commencement of his incarceration. The Court held that the defendant was in the custody of the State for purposes of § 2254(b) because he was "subject to restraints 'not shared by the public generally,'" 411 U. S., at 351 (citation omitted)—indeed, his arrest was imminent.[10]

---

minations of federal issues which have been adjudicated by the highest court of a state." 648 F. 2d, at 139.

Jurisdiction to challenge both state and federal judgments is conferred by § 2241. But § 2254, conferring general jurisdiction to consider collateral attacks on state judgments, has no relevance to *federal* habeas proceedings challenging federal custody of nonprisoners. Thus, federal decisions made pursuant to § 2241 constitute no authority for the claim of jurisdiction under § 2254 in this case.

[10] In *Hensley*, the State would have placed the petitioner behind bars, but was prevented by a stay entered by the state trial court that subse-

Thus, although the scope of the writ of habeas corpus has been extended beyond that which the most literal reading of the statute might require, the Court has never considered it a generally available federal remedy for every violation of federal rights. Instead, past decisions have limited the writ's availability to challenges to state-court judgments in situations where—as a result of a state-court criminal conviction—a petitioner has suffered substantial restraints not shared by the public generally. In addition, in each of these cases the Court considered whether the habeas petitioner was "in custody" within the meaning of § 2254.[11]

Ms. Lehman argues that her sons are involuntarily in the custody of the State for purposes of § 2254 because they are in foster homes pursuant to an order issued by a state court. Her sons, of course, are not prisoners. Nor do they suffer any restrictions imposed by a state criminal justice system. These factors alone distinguish this case from all other cases in which this Court has sustained habeas challenges to state-court judgments. Moreover, although the children have been placed in foster homes pursuant to an order of a Pennsylvania court, they are not in the "custody" of the State in the sense in which that term has been used by this Court in determining the availability of the writ of habeas corpus. They are in the "custody" of their foster parents in essentially the same way, and to the same extent, other children are in the custody of their natural or adoptive parents. Their situation in this respect differs little from the situa-

---

quently was extended by two Justices of this Court. 411 U. S., at 351. Thus, although *Hensley* held the writ to be available in a case in which there was no actual custody in a state penal institution at the time the writ was filed, the extension was in the context of a person who had a strong claim to be treated as a prisoner for jurisdictional purposes.

[11] See *Hensley*, 411 U. S., at 345 ("This case requires us to determine whether a person released on his own recognizance is 'in custody' within the meaning of the federal habeas corpus statute . . ."); *Carafas* v. *LaVallee*, 391 U. S., at 238 (similar); *Jones* v. *Cunningham*, 371 U. S., at 236 (similar).

tion of other children in the public generally; they suffer no unusual restraints not imposed on other children. They certainly suffer no restraint on liberty as that term is used in *Hensley* and *Jones*, and they suffer no "collateral consequences"—like those in *Carafas*—sufficient to outweigh the need for finality. The "custody" of foster or adoptive parents over a child is not the type of custody that traditionally has been challenged through federal habeas.[12]  Ms. Lehman simply seeks to relitigate, through federal habeas, not any liberty interest of her sons, but the interest in her own parental rights.[13]

Although a federal habeas corpus statute has existed ever since 1867, federal habeas has never been available to challenge parental rights or child custody.[14]  Indeed, in two cases, the Court refused to allow the writ in such instances. *Matters* v. *Ryan*, 249 U. S. 375 (1919); *In re Burrus*, 136 U. S. 586 (1890).  These decisions rest on the absence of a federal question, but the opinions suggest that federal habeas corpus is not available to challenge child custody.  Moreover,

---

[12] We express no view as to the availability of federal habeas when a child is actually confined in a state institution rather than being at liberty in the custody of a foster parent pursuant to a court order.

[13] At the hearing before the Pennsylvania trial court, petitioner's lawyer actually stated "[t]his is not a custody proceeding . . . ." Tr. 67.

[14] The Court has considered constitutional challenges to custody or parental-rights proceedings, but these cases have reached the Court on direct review of the final state-court decision, not on federal habeas.  See, e. g., *Santosky* v. *Kramer*, 455 U. S. 745 (1982).

JUSTICE BLACKMUN's dissenting opinion states that the legislative history, though admittedly sparse, supports its interpretation of the scope of § 2254 because "[t]he codification of the writ into federal law indicates no congressional intent to contract its common-law scope."  See *post*, at 518.  But the dissenting opinion cites no legislative history relevant to state-court custody decisions.  Moreover, for at least 100 years after passage of the statute in 1867, the writ was not used in child-custody cases.  This history strongly suggests that the extension of federal habeas corpus to state custody cases was never contemplated by Congress, nor understood by the Bar to have been an available remedy.

federal courts consistently have shown special solicitude for state interests "in the field of family and family-property arrangements." *United States* v. *Yazell,* 382 U. S. 341, 352 (1966). Under these circumstances, extending the federal writ to challenges to state child-custody decisions—challenges based on alleged constitutional defects collateral to the actual custody decision—would be an unprecedented expansion of the jurisdiction of the lower federal courts.[15]

## B

Federalism concerns and the exceptional need for finality in child-custody disputes argue strongly against the grant of Ms. Lehman's petition.[16] The writ of habeas corpus is a major exception to the doctrine of res judicata, as it allows relitigation of a final state-court judgment disposing of precisely the same claims. Because of this tension between the State's interest in finality and the asserted federal interest, federal courts properly have been reluctant to extend the

---

[15] Petitioner maintains that the approval of habeas jurisdiction in this case may be limited. She suggests that it could be available only when the State takes the child away from its natural parents, but not when the State simply determines custody in a routine intrafamily dispute. It is not apparent that such distinctions are possible, either in legal theory or as a practical matter. The circumstances of custody vary widely, though in each disputed case the child is in the custody of one person—over the objections of someone else—by order of a state court. We see no principled basis for distinguishing between the claim of a natural parent and the claim of grandparents or even the claim of an unrelated person who has been given legal custody that is challenged by a third party. Moreover, the arguments of res judicata and federalism apply with equal force in every collateral attack on a state custody decision in a federal court.

[16] The dissent suggests that comity and federalism concerns cannot inform a court's construction of a statute in determining a question of jurisdiction over certain kinds of cases. *Post,* at 522–523. But in *Fair Assessment in Real Estate Assn.* v. *McNary,* 454 U. S. 100 (1981), precisely those concerns lead this Court to conclude that 42 U. S. C. § 1983 does not confer jurisdiction on the federal courts to hear suits for tax refunds when state law provides an adequate remedy.

writ beyond its historic purpose. As Judge Campbell noted in *Sylvander* v. *New England Home for Little Wanderers:*

> "Federal habeas involves a substantial thrust by the federal system into the sphere normally reserved to the states and hence a change in the federal-state balance. This is so because the federal habeas remedy, as recently fashioned, offers a federal forum regardless of what state proceedings have already taken place and in effect allows a single federal district judge to overrule the judgment of the highest state court, unfettered by the constraints of collateral estoppel and res judicata." 584 F. 2d, at 1111–1112.[17]

The State's interest in finality is unusually strong in child-custody disputes. The grant of federal habeas would prolong uncertainty for children such as the Lehman sons, possibly lessening their chances of adoption. It is undisputed that children require secure, stable, long-term, continuous relationships with their parents or foster parents. There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home," under the care of his parents or foster parents,

---

[17] In his decision below, Judge Garth expressed similar views:

"While the ability to avoid *res judicata* is an extraordinary characteristic of habeas when the relitigation takes place within the same judicial system—that is, when a state court entertains the writ on behalf of a person in custody pursuant to the judgment of a court of that same state—the writ assumes even more profound implications when its operation cuts across the federal and state judicial systems. [T]he assumption of habeas jurisdiction by a federal court on behalf of a party complaining of a judgment rendered against him by a state court, represents an unparalleled assertion of federal authority over the state judicial system. Such an intrusion upon state judicial authority deeply implicates the principles of comity and may impair the smooth workings of our federal system.

"The awesome power of the writ to avoid *res judicata*, and its implications for our federalism, demand that its use be confined to its proper role: the preservation of individual liberty and the relief from unlawful custody." 648 F. 2d, at 139.

especially when such uncertainty is prolonged. Extended uncertainty would be inevitable in many cases if federal courts had jurisdiction to relitigate state custody decisions.[18]

## III

Petitioner argues that habeas corpus should be available to her because it has been used as a procedure in child-custody cases in various States and in England. She notes that, in *Jones* v. *Cunningham*, 371 U. S., at 238–240, the Court indicated that in construing the habeas statute, reference may be made to the common law and to practices in the States and in England. It is true that habeas has been used in child-custody cases in England and in many of the States. See *id.,* at 239–240, and nn. 8, 12, and 13, citing *Ford* v. *Ford*, 371 U. S. 187 (1962); *Boardman* v. *Boardman,* 135 Conn. 124, 138, 62 A. 2d 521, 528 (1948); *Ex parte Swall,* 36 Nev. 171, 174, 134 P. 96, 97 (1913); *Ex parte M'Clellan,* 1 Dowl. 81 (K. B. 1831); *Earl of Westmeath* v. *Countess of Westmeath,* as set out in reporter's footnote in *Lyons* v. *Blenkin,* 1 Jac. 245, 264, 37 Eng. Rep. 842, 848 (Ch. 1821). As these cases illustrate, the term "custody" in 28 U. S. C. § 2255—authorizing federal-court collateral review of federal decisions—could be construed to include the type of custody the Lehman children are subject to, since they are in foster homes pursuant to court orders. But reliance on what may be appropriate *within* the federal system or *within* a state system is of little force where—as in this case—a *state judgment* is attacked collaterally in a *federal* court. It is one thing to use a proceeding called "habeas corpus" in resolving child-custody disputes within a single system obligated to resolve such disputes.

---

[18] There is also the danger that "if litigation expenses mount, social workers and charitable organizations . . . may well become less willing to seek placements for children over their parents' objections, whether rational or irrational, even though in their honest judgment the child's best interests demand it." *Sylvander* v. *New England Home for Little Wanderers,* 584 F. 2d, at 1112.

The question in such a case may be which procedure is most appropriate. The system is free to set time limits on the bringing of such actions as well as to impose other requirements to ensure finality and a speedy resolution of disputes in cases involving child custody or termination of parental rights. In this case, however, petitioner would have the federal judicial system entertain a writ that is not time-barred to challenge collaterally a final judgment entered in a state judicial system. In *Sylvander* v. *New England Home for Little Wanderers*, the Court of Appeals for the First Circuit gave a compelling answer to this argument:

> "Federal habeas when applied to persons under state control is a procedure of unique potency within the federal-state framework, having far different and more far-reaching consequences than a state's utilization of habeas within its own system. State utilization of habeas to test the legal custody of a child is part of the fabric of its reserved jurisdiction over child custody matters. If a habeas remedy were not provided, some other procedure would be needed to effectuate the state's substantive interest in these relationships. It is purely a matter of procedural detail whether the remedy is called 'habeas' or something else. The federal government, however, has no parallel substantive interest in child custody matters that federal habeas would serve. The sole federal interest is in the constitutional issues collateral to such disputes. At bottom, the question is whether these constitutional issues can be adequately raised through the usual channels—appeal, certiorari and the civil rights statutes—or whether the vehicle of federal habeas, with its unique features, is required." 584 F. 2d, at 1111.

## IV

The considerations in a child-custody case are quite different from those present in any prior case in which this Court has sustained federal-court jurisdiction under § 2254. The

federal writ of habeas corpus, representing as it does a profound interference with state judicial systems and the finality of state decisions, should be reserved for those instances in which the federal interest in individual liberty is so strong that it outweighs federalism and finality concerns.[19]  Congress has indicated no intention that the reach of § 2254 encompass a claim like that of petitioner.  We therefore hold that § 2254 does not confer federal-court jurisdiction.  The decision below, affirming the denial of a writ of habeas corpus, therefore is affirmed.

*It is so ordered.*

JUSTICE BLACKMUN, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

Although I can sympathize with what the Court seeks to accomplish in this case today, I cannot reconcile myself to its holding that "§ 2254 does not confer federal-court jurisdiction," *ante*, this page, to consider collateral challenges to state-court judgments involuntarily terminating parental rights.  In my view, the literal statutory requisites for the exercise of § 2254 federal habeas corpus jurisdiction are satisfied here—in particular, the requirement that petitioner's children must be "in custody."  Because I believe the Court could have achieved much the same practical result in this area without decreeing a complete withdrawal of federal jurisdiction, I respectfully dissent.

## I

Justice Black, speaking for a unanimous Court in *Jones* v. *Cunningham*, 371 U. S. 236, 243 (1963), observed that the

---

[19] In *Hensley*, this Court observed:

"The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty.  Since habeas corpus is an extraordinary remedy whose operation is to a large extent uninhibited by traditional rules of finality and federalism, its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate." 411 U. S., at 351.

federal writ of habeas corpus "is not now and never has been a static, narrow, formalistic remedy."

> "While limiting its availability to those 'in custody,' the statute does not attempt to mark the boundaries of 'custody' nor in any way other than by use of that word attempt to limit the situations in which the writ can be used. To determine whether habeas corpus could be used to test the legality of a given restraint on liberty, this Court has generally looked to common-law usages and the history of habeas corpus both in England and in this country." *Id.*, at 238.

Even a brief historical examination of common-law usages teaches two lessons: first, for centuries, the English and American common-law courts have had the undisputed *power* to issue writs of habeas corpus ordering the release of children from unlawful custody; and, second, those courts have exercised broad *discretion* in deciding whether or not to invoke that power in a given case. English common-law courts traditionally were authorized to order the release of minor children from unlawful custody.[1] Relying on the English tradition, American state courts very early asserted their own power to issue common-law habeas writs in child-custody matters. See generally Oaks, Habeas Corpus in the States—1776–1865, 32 U. Chi. L. Rev. 243, 270–274 (1965).

While acknowledging that "habeas has been used in child-custody cases in England and in many of the States," *ante*, at 514, the Court suggests that a state court derives its authority

---

[1] In *King* v. *Delaval*, 3 Burr. 1434, 1436–1437, 97 Eng. Rep. 913, 914 (K. B. 1763), Lord Mansfield declared:

"In cases of writs of habeas corpus directed to private persons 'to bring up infants,' the Court is bound, ex debito justitiae, to set the infant free from an improper restraint: but they are not bound to deliver them over to any body nor to give them any privilege. This must be left to their discretion, according to the circumstances that shall appear before them.

.        .        .        .        .

"The true rule is, 'that the Court[s] are to judge upon the circumstances of the particular case; and to give their directions accordingly.'"

518

to issue a writ of habeas corpus in such disputes not from the common law, but from "'the fabric of its reserved jurisdiction over child custody matters.'" *Ante*, at 515, quoting *Sylvander* v. *New England Home for Little Wanderers*, 584 F. 2d 1103, 1111 (CA1 1978). While such a conclusion is not illogical, it is surely ahistorical. Contrary to the Court's suggestion, it is *not* "'purely a matter of procedural detail whether the [state] remedy is called "habeas" or something else.'" *Ibid.* A state court's traditional power to issue a writ of habeas corpus to free a confined child always has been derived directly from the nature of the writ, not from any reserved jurisdiction over child-custody matters.[2]

The codification of the writ into federal law indicates no congressional intent to contract its common-law scope. The sparse legislative history of the predecessor statute to 28 U. S. C. § 2254, the Habeas Corpus Act of February 5, 1867, ch. 28, § 1, 14 Stat. 385, gave "no indication whatever that the bill intended to change the general *nature* of the classical habeas jurisdiction." Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv. L. Rev. 441, 476–477 (1963) (emphasis in original).[3] Nor, since

---

[2] See, *e. g.*, R. Hurd, A Treatise on the Right of Personal Liberty and on the Writ of Habeas Corpus 454–521 (1858); W. Church, A Treatise of the Writ of Habeas Corpus 555–557 (1886); L. Hochheimer, A Treatise on the Law Relating to the Custody of Infants 156–162 (1887); H. Clark, The Law of Domestic Relations in the United States 578–580 (1968); Bantz, Habeas Corpus—Custody of Infant, 15 Cent. L. J. 281, 281–282 (1882) (footnote omitted) (The writ "is granted on the application of the parent, guardian or master to inquire into the legality of the restraint of the child, ward, etc.; and its object is, not to enforce a right of custody, but to remove unlawful restraint"); Hand, Habeas Corpus Proceedings for the Release of Infants, 56 Cent. L. J. 385, 388 (1903) ("Whenever the parent seeks to recover a child from any third person, the approved remedy is *habeas corpus*"); Oaks, Habeas Corpus in the States—1776–1865, 32 U. Chi. L. Rev. 243, 273 (1965).

[3] To the contrary, the legislators plainly intended to enact "a bill of the largest liberty" that would not "restrain the writ of *habeas corpus* at all" and would "enable the courts of the United States to enforce the *freedom*

that time, has this Court ever held that the congressional purpose originally underlying the statute barred use of the federal writ to free children from unlawful state custody.[4] The Court's more recent precedents have firmly established § 2254's "in custody" requirement as its most flexible element, stressing that the test of "custody" is not present physical restraint, but whether "there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus." *Jones* v. *Cunningham*, 371 U. S., at 240.

Today the Court bows in the direction of this historical precedent only by leaving open the possible availability of federal habeas if a child is actually confined in a state institution, rather than in the custody of a foster parent pursuant to a court order.[5] *Ante*, at 511, n. 12. At the same time, how-

---

*of the wife and children of* soldiers of the United States, and *also to enforce the liberty of all persons.*" Cong. Globe, 39th Cong., 1st Sess., 4151 (1866) (remarks of Rep. Lawrence) (emphasis added).

[4] In *Wales* v. *Whitney*, 114 U. S. 564 (1885), which early delineated the forms of "custody" subject to the writ, the Court stated:

"There is no very satisfactory definition to be found in the adjudged cases of the character of the restraint or imprisonment suffered by a party applying for the writ of *habeas corpus*, which is necessary to sustain the writ. . . . Wives restrained by husbands, *children withheld from the proper parent or guardian,* persons held under arbitrary custody by private individuals, as in a madhouse, as well as those under military control, may all become proper subjects of relief by the writ of *habeas corpus.*" *Id.,* at 571 (emphasis added).

In *In re Burrus*, 136 U. S. 586 (1890), and *Matters* v. *Ryan*, 249 U. S. 375 (1919), this Court refused to permit the federal writ to be used in private child-custody disputes, stating in dictum that matters of family law are reserved for the States. As the Court correctly notes, however, *ante*, at 511–512, those cases dismissed habeas petitions for want of federal-question jurisdiction, and thus did not generally deny the federal courts power to issue writs of habeas corpus in child-custody cases.

[5] Notwithstanding their conclusions that federal habeas "jurisdiction" does not lie in child-custody cases, neither plurality opinion in the Court of

ever, the Court presents three reasons why federal courts lack "jurisdiction" to issue writs of federal habeas corpus to release children from the latter form of state custody. Not one of these reasons is sufficient to erect a *jurisdictional,* as opposed to a prudential, bar to federal habeas relief.[6]

First, the Court restrictively reads *Jones* v. *Cunningham, supra; Carafas* v. *LaVallee,* 391 U. S. 234 (1968); and *Hensley* v. *Municipal Court,* 411 U. S. 345 (1973), and deems those three cases to involve only substantial and unusual restraints suffered by individuals "as a result of a state-court *criminal conviction." Ante,* at 510 (emphasis added). Yet those decisions plainly drew no distinction between crim-

---

Appeals was willing to foreclose a federal court's power to issue the writ to secure a child's release from state custody under extreme circumstances. See 648 F. 2d 135, 144 (CA3 1981) (en banc) (Garth, J., announcing the judgment of the court) (" 'Were [the Lehman boys] *incarcerated* in a state home, or were there other issues making this truly a struggle for liberty by one imprisoned under the aegis of the state,' the writ might well be available") (citation omitted; emphasis in original); *id.,* at 152, n. 35 (Adams, J., concurring) ("Should the children be in state custody against their will, it is even possible that habeas would be an appropriate vehicle for the legal attack"). See also *Sylvander* v. *New England Home for Little Wanderers,* 584 F. 2d 1103, 1113 (CA1 1978) (leaving open the possibility that federal habeas corpus might be available to free a child from state custody).

[6] I disagree with the Court's announcement that "no principled basis" would exist for limiting the approval of federal habeas jurisdiction in child-custody disputes. *Ante,* at 512, n. 15. When, as in this case, the State both initiates the challenged judicial proceedings *and* remains the ongoing legal custodian of the child, subject to state-court order, the state action is plainly sufficient to create "custody in violation of the Constitution . . . of the United States" for § 2254 purposes.

Intrafamily disputes, however, are ordinarily privately initiated and result in private custody. If a child's natural parents disputed custody, and a state court awarded custody to one of them, a legitimate question would arise whether that person "may fairly be said to be a state actor." *Lugar* v. *Edmondson Oil Co.,* 457 U. S. 922, 937 (1982). See also *Dennis* v. *Sparks,* 449 U. S. 24, 28 (1980) ("Of course, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a . . . joint actor with the judge").

inal and civil detention. To the contrary, they declared in unusually broad and expansive language that the habeas writ must be widely available "as a remedy for severe restraints on individual liberty." *Hensley* v. *Municipal Court*, 411 U. S., at 351.[7] Indeed, for its interpretation of the statutory "custody" requirement, *Jones* itself expressly relied on the fact that at common law, English courts had "permitted a parent to use habeas corpus to obtain his children from the other parent, even though the children were 'not under imprisonment, restraint, or duress of any kind.'" 371 U. S., at 239, citing *Earl of Westmeath* v. *Countess of Westmeath*, as set out in a reporter's footnote in *Lyons* v. *Blenkin*, 1 Jac. 245, 264, 37 Eng. Rep. 842, 848 (Ch. 1821).

Second, the Court argues that children living with foster parents somehow are not in the State's "custody" because "they suffer no unusual restraints not imposed on other children." *Ante*, at 511. Yet because unadopted children whose ties with their natural parents have been severed are wards of the State, the State decides where they will live, reserves the right to move them to new physical settings at will, and consents to their marriage, their enlistment in the Armed Forces, as well as all major decisions regarding medical, psychiatric, and surgical treatment. See Tr. of Oral Arg. 7 and 18, citing 23 Pa. Cons. Stat. § 2521(c) (1980).

This Court has found the statutory concept of "custody" broad enough to confer jurisdiction on federal courts to hear

---

[7] See *Jones* v. *Cunningham*, 371 U. S., at 243 (the "grand purpose" of the writ is "the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty"); *Carafas* v. *LaVallee*, 391 U. S., at 238 (the "province" of the writ "is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person"); *Hensley* v. *Municipal Court*, 411 U. S., at 350 ("[W]e have consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements. . . . That same theme has indelibly marked our construction of the statute's custody requirement").

and determine habeas applications from petitioners who have freely traveled across state borders while released on their own recognizance, *Hensley* v. *Municipal Court, supra,* and who are on unattached, inactive Army Reserve duty, *Strait* v. *Laird,* 406 U. S. 341 (1972). Under these precedents, I have difficulty finding that minor children, who as state wards are fully subject to state-court custody orders, are not sufficiently and peculiarly restrained to be deemed "in custody" for the purposes of the habeas corpus statute. Cf. *Braden* v. *30th Judicial Circuit Court of Ky.,* 410 U. S. 484, 501 (1973) (opinion concurring in result); *Hensley* v. *Municipal Court,* 411 U. S., at 353 (opinion concurring in result). Equally important, "[w]ith respect to the argument, that some force or improper restraint must be used, in order to authorize the Court in removing an infant from the custody of any one," historical authorities show that "it is not necessary that any force or restraint should exist on the part of the person having the custody of the infant towards it." *Ex parte M'Clellan,* 1 Dowl. 81, 84 (K. B. 1831) (Patteson, J.). Accord: R. Hurd, A Treatise on the Right of Personal Liberty and on the Writ of Habeas Corpus 455 (1858); W. Church, A Treatise of the Writ of Habeas Corpus 555 (1886).

Third, the Court asserts that "[f]ederalism concerns and the exceptional need for finality in child-custody disputes argue strongly against the grant of Ms. Lehman's petition." *Ante,* at 512. While I am fully sensitive to these concerns, once again I cannot understand how they deprive federal courts of statutory *jurisdiction* to entertain habeas petitions. Although the Court's decisions involving collateral attack by state prisoners against state criminal convictions have recognized similar federalism and finality concerns, they have never held that those interests erect jurisdictional bars to relief. To the contrary, the Court has carefully separated the question whether federal courts have the power to issue a writ of habeas corpus from the question whether "in some circumstances considerations of comity and concerns for the

orderly administration of criminal justice require a federal court to forgo the exercise of its habeas corpus power." *Francis* v. *Henderson*, 425 U. S. 536, 539 (1976). See also *Stone* v. *Powell*, 428 U. S. 465, 478, n. 11, and 495, n. 37 (1976) ("Our decision does not mean that the federal court lacks jurisdiction over such a claim . . ."); *Fay* v. *Noia*, 372 U. S. 391, 425–426 (1963).

## II

As a matter of history and precedent, then, "[t]here can be no question of a federal district court's power to entertain an application for a writ of habeas corpus in a case such as this. . . . The issue . . . goes rather to the appropriate exercise of that power." *Francis* v. *Henderson*, 425 U. S., at 538–539. Cf. 648 F. 2d 135, 155 (CA3 1981) (en banc) (Seitz, C. J., concurring). In my view, the difficult discretionary question in this case is whether, 11 years after petitioner voluntarily relinquished her sons to state custody and 4 years after the involuntary termination of her parental rights was affirmed on direct appeal, she remains a proper "next friend" to apply for the federal habeas writ on behalf of her natural children.

As amended in 1948, the federal habeas statute permits a third-party application for habeas relief only if it is "signed and verified by the person for whose relief it is intended or *by someone acting in his behalf*." 28 U. S. C. § 2242 (emphasis added). "But one who so signs and verifies does not thereby become the applicant"; the person under detention remains the real party in interest. *Nash ex rel. Hashimoto* v. *MacArthur*, 87 U. S. App. D. C. 268, 270, 184 F. 2d 606, 608 (1950), cert. denied, 342 U. S. 838 (1951). For that reason, the "next friend" application has been uncommonly granted, see *Weber* v. *Garza*, 570 F. 2d 511, 513–514 (CA5 1978); *United States ex rel. Bryant* v. *Houston*, 273 F. 915, 916 (CA2 1921); *United States ex rel. Funaro* v. *Watchorn*, 164 F. 152, 153 (CC SDNY 1908), and has not been made available automatically even to the natural parents of a habeas

petitioner. See, *e. g.*, *Evans* v. *Bennett*, 467 F. Supp. 1108, 1110 (SD Ala. 1979). Cf. *Gilmore* v. *Utah*, 429 U. S. 1012, 1013–1014 (1976) (BURGER, C. J., concurring).

Historically, the English common-law courts permitted parents to use the habeas writ to obtain custody of a child as a way of vindicating their own rights. American common-law courts, however, soon relied on Lord Mansfield's language in *King* v. *Delaval*, see n. 1, *supra*, to resolve custody disputes initiated by way of a habeas writ in a manner best adapted to serve the welfare of the child. See Oaks, Habeas Corpus in the States—1776–1865, 32 U. Chi. L. Rev., at 270 and 274. Thus, the American common-law rule came to be that "the parent stands in court as the real party in interest, upon his natural right of parent; but he is liable to be defeated by his own wrongdoing or unfitness and by the demands and requirements of society that the well-being of the child shall be deemed paramount to the natural rights of an unworthy parent." Hand, Habeas Corpus Proceedings for the Release of Infants, 56 Cent. L. J. 385, 389 (1903).

Similarly, the federal courts have interpreted the writ as being available only to serve the best interest of the child. "'When a party comes here, using the privilege of acting on the behalf and as the next friend of infants, it is his bounden duty to show that he really acts for the benefit of the infants, and not to promote purposes of his own.'" *King* v. *McLean Asylum of Massachusetts General Hospital*, 64 F. 331, 356 (CA1 1894), quoting *Sale* v. *Sale*, 1 Beav. 586, 587, 48 Eng. Rep. 1068, 1069 (1839). "[I]n such cases the court exercises a discretion in the interest of the child to determine what care and custody are best for it in view of its age and requirements." *New York Foundling Hospital* v. *Gatti*, 203 U. S. 429, 439 (1906).[8]

---

[8] Presiding over *United States* v. *Green*, 26 F. Cas. 30 (No. 15,256) (CC RI 1824), Justice Story concluded:

"[T]he right of the father to have the custody of his infant child . . . is not on account of any absolute right of the father, but for the benefit of the

Against this historical background, then, I find most telling the Court's observation that "Ms. Lehman simply seeks to relitigate, through federal habeas, not any liberty interest of her sons, but the interest in her own parental rights." *Ante*, at 511. As the Court notes, the record reveals no evidence that any of the sons wanted to return to their natural mother. See *ante*, at 504, n. 2. Moreover, in filing her federal habeas petition, petitioner expressly did not seek to disturb the state trial court's factual findings. See Brief for Petitioner 6. Those findings made "absolutely clear . . . that, by reason of her very limited social and intellectual development combined with her five-year separation from the children, [petitioner] is incapable of providing minimal care, control and supervision for the three children. Her incapacity cannot and will not be remedied." *In re William L.*, 477 Pa. 322, 345, 383 A. 2d 1228, 1239–1240, cert. denied *sub nom. Lehman* v. *Lycoming County Children's Services*, 439 U. S. 880 (1978).

On such a record, I believe that the District Court could have found, as a discretionary matter, that petitioner had not made a sufficient showing that she acted in the interests of the children to warrant issuing her the writ as their "next friend."[9] Indeed, I believe that the common-law habeas

---

infant, the law presuming it to be for his interest to be under the nurture and care of his natural protector, both for maintenance and education. When, therefore, the court is asked to lend its aid to put the infant in the custody of the father, and to withdraw him from other persons, it will look into all the circumstances, and ascertain whether it will be for the real permanent interests of the infant; and if the infant be of sufficient discretion it will also consult its personal wishes. . . . It is an entire mistake to suppose the court is at all events bound to deliver over the infant to his father, or that the latter has an absolute vested right in the custody." *Id.*, at 31–32.

[9] Petitioner's colorable claim that her own constitutional rights were infringed would not have entitled her automatically to serve as a "next friend." As Judge Adams' concurring opinion in the Court of Appeals observed:

"Even if we assume that the statute under which the termination occurred, and which survived attack in the state courts, is unconstitutional, it is

corpus tradition would have supported recognition of broad district court discretion to withhold the writ in all but the most extraordinary cases, where the district court had strong reason to believe both that the conditions of the child's confinement unconstitutionally constrained that child's liberty, and that release of the child to his natural parent very likely would serve the child's best interest.

Such a ruling would not have been inconsistent with the Court's decision today, which expressly bases denial of habeas relief on a need to reserve the federal writ "for those instances in which the federal interest in individual liberty is so strong that it outweighs federalism and finality concerns." *Ante*, at 516. Indeed, I cannot understand why the Court's explicit balancing approach yields a strict *jurisdictional* bar. A discretionary limit would have allowed the writ to issue only in those very rare cases that demanded its unique "capacity to . . . cut through barriers of form and procedural mazes." *Harris* v. *Nelson*, 394 U. S. 286, 291 (1969). Because the Court overrides contrary history and precedent to find that habeas jurisdiction does not lie, I dissent.

---

highly possible that Mrs. Lehman, in challenging the statute ostensibly on behalf of the children, may actually be asserting an interest that derogates from the child's interest. That is, the child's interest in a sound family environment that the state statute was intended to protect may not be properly represented by the parent's demand for family unity. . . . [W]hat is questionable here is her right to resort to a habeas petition, which can be framed only on behalf of her children." 648 F. 2d, at 154 (footnote omitted).

I disagree, however, with Judge Adams' conclusion that petitioner lacks "standing to assert [a federal habeas] action on behalf of the three children." *Id.*, at 155. As Judge Rosenn correctly responded in dissent, petitioner plainly has standing in a constitutional sense to challenge the violation of her own rights. The question here, however, is whether "Ms. Lehman may not be the best—or even a proper—relator in this action." *Id.*, at 156, n. 2. Cf. *id.*, at 154, n. 47 (Adams, J., concurring).