IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF FILED

W.D., FATHER OF N.D. AND S.D.,
CHILDREN,

      Appellant,

v.

DEPARTMENT OF CHILDREN AND
FAMILIES,

      Appellee.

_____/

Case No. 5D18-2241

Opinion filed October 5, 2018

Appeal from the Circuit Court for
Marion County,
Gary L. Sanders, Judge.

Brenda H. Smith, Umatilla, for Appellant.

Kelley Schaeffer, Appellate Counsel, Department of Children and Families, Children's Legal Services, Bradenton, for Appellee.

Thomasina Moore, Statewide Director of Appeals, and Sara E. Goldfarb, Appellate Counsel, Guardian ad Litem Program, Tallahassee, for Guardian ad Litem Program.

COHEN, C.J.

This case, involving the termination of W.D.'s parental rights to two children, N.D. and S.D., comes to us in an unusual posture.[1] The trial court granted the Department of Children and Family's petition for termination of parental rights. On appeal, the Department suggests the trial court erred in granting its petition. The Guardian ad Litem disagrees and argues that the record supports the trial court's determination. We affirm.

An order terminating parental rights will be upheld if it is supported by clear and convincing evidence. L.F. v. Dep't of Child. & Fams., 888 So. 2d 147, 148 (Fla. 5th DCA 2004). The evidence reflected that both parents of the children are admitted addicts. Even after N.D. was born with drugs in her system, requiring her extensive hospitalization, the parents continued to abuse drugs, resulting in S.D. suffering the same fate.

W.D.'s history of drug abuse is long-term and includes convictions in Kentucky for drug trafficking and in Florida for drug possession. The children were initially removed from the parents in 2015.[2] They were found to be dependent, and a case plan was formulated. W.D.'s case plan tasks were to undergo substance abuse evaluation, submit to random drug screens, obtain a biopsychosocial evaluation, complete a parenting class, have suitable housing and income, visit the children, and pay child support. Apart from a few visits with the children, W.D. failed to comply with the case plan.

At the review hearing, the trial court placed the children in a permanent guardianship with their maternal grandmother, finding that neither W.D. nor the children's

---

[1] Both W.D.'s and the mother's parental rights were terminated, but this appeal relates only to the termination of W.D.'s parental rights.

[2] At the time of the removal, N.D. was one year old, while S.D. was three days old and still in the hospital.

mother had completed the case plan within a reasonable time. Subsequently, W.D. was arrested again on a series of charges including possession of methamphetamine.

The trial court modified the children's placement after their maternal grandmother returned them to their mother in violation of the guardianship order. The children were then placed into foster care where they have remained.

An amended case plan was entered with concurrent goals of reunification and adoption through termination of parental rights. W.D.'s tasks were identical to those in the first case plan. W.D.'s incarceration impacted his ability to comply with the second case plan.

In 2018, almost three years after the children were removed, the Department filed a petition for termination of parental rights. Both parents were incarcerated at the time of the filing. Following trial, the court terminated W.D.'s and the mother's parental rights.

On appeal, W.D. argues that the court erred in considering his noncompliance with the first case plan. We find no error. W.D. had more than a year before his incarceration to comply with the case plan but made virtually no effort to do so. In evaluating whether termination of his parental rights was supported by the evidence, the trial court needed to determine whether W.D. was likely to substantially comply with the second case plan. § 39.806(1)(e)2., Fla. Stat. (2017). His past history was relevant to that determination. See In re J.B., 923 So. 2d 1201, 1207 (Fla. 2d DCA 2006) ("[A] parent's past conduct necessarily has some predicative value as to that parent's likely future conduct . . . .").

The Legislature designed Chapter 39 to prevent children such as N.D. and S. D. from languishing in foster care. See S.M. v. Fla. Dep't of Child. & Fams., 202 So. 3d 769, 781–82 (Fla. 2016) ("The Legislature has also made clear that '[t]ime is of the essence'

3

in providing permanency for children . . . if possible, children should be placed in a permanent living situation within one year . . . . [T]here is a strong policy incentive in achieving permanency for children in care as quickly as possible."); see also Lehman v. Lycoming Cty. Children's Servs. Agency, 458 U.S. 502, 513–14 (1982) ("It is undisputed that children require secure, stable, long-term, continuous relationships with their parents or foster parents. There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current 'home,' . . . especially when such uncertainty is prolonged.").

AFFIRMED.

WALLIS and GROSSHANS, JJ., concur.