NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

22-215 consolidated with 22-216


STATE OF LOUISIANA
IN THE INTEREST OF
M.J.D., III; T.C.-M.D.; AND K.R.D.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NUMBER 34061
HONORABLE W. MITCHELL REDD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

SHARON DARVILLE WILSON
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, D. Kent Savoie, and Sharon Darville Wilson, Judges.

AFFIRMED.

**Jane Hogan**
**Hogan Attorneys**
**310 North Cherry Street**
**Hammond, LA  70401**
**(985) 542-7730**
**Counsel for Appellant:**
    **M.J.D., Jr.**

**Amy McGray**
**Children Advocacy Program**
**1 Lakeshore Drive, Suite 1001**
**Lake Charles, LA  70629**
**(337) 491-2461**
**Counsel for M.J.D., III; T.C.-M.D.; and K.R.D.**

**Edward "Ted" Nichols**
**827 Pujo Street**
**Lake Charles, LA  70601**
**(337) 439-8587**
**Counsel for Appellee:**
    **M.J.D., Jr.**

**Nick Pizzolato, Jr.**
**1919 Kirkman Street**
**Lake Charles, LA  70601**
**(337) 491-2066**
**Counsel for Appellee:**
    **State of Louisiana, Department of Children and Family Services**

**Annette Roach**
**Roach & Roach, APLC**
**4315 Lake Street, Suite 4**
**Lake Charles, LA  70605**
**(337) 436-2900**
**Counsel for Appellant:**
    **A.H.D.**

**J. Wade Smith**
**724 Clarence Street**
**Lake Charles, LA  70601**
**(337) 436-8424**
**Counsel for Appellant:**
    **A.H.D.**

**Mike Stratton**
**1032 Ryan Street**
**Lake Charles, LA  70601**
**(337) 263-8351**
**Counsel for Foster Parents**

**WILSON, Judge.**

In this consolidated appeal, A.H.D., the biological mother of M.J.D., III; T.C.-M.D.; and K.R.D., appeals the termination of her parental rights as to all three children. She also appeals the trial court's certification of the three children for adoption. M.J.D., Jr., who is the biological father of M.J.D., III, and T.C.-M.D. and the legal father or K.R.D., appeals the termination of his parental rights as to all three children and the trial court's certification of the three children for adoption. For the following reasons, we affirm the trial court's rulings.

I.

## ISSUES

We must decide whether the state properly terminated the parental rights of A.H.D. and M.J.D., Jr., and certified the three minor children for adoption. The parents allege that termination was unwarranted because the State did not prove by clear and convincing evidence that: (1) they intended to permanently avoid parental responsibility for the three children; (2) they did not substantially comply with their case plans; (3) the Department of Children and Family Services (DCFS) provided reasonable efforts to facilitate reunification; (4) there was no reasonable expectation of significant improvement; and/or (5) termination of parental rights was in the children's best interest.

II.

## FACTS AND PROCEDURAL HISTORY

M.J.D., III, was born on November 23, 2015. T.C.-M.D. was born on April 3, 2017. K.R.D. was born on January 15, 2019. A.H.D. is the biological mother of all three children. M.J.D., Jr., is the biological father of M.J.D., III, and T.C.-M.D. He was excluded by DNA testing as being the biological father of K.R.D., but he is

presumed to be her father. La.Civ.Code Art. 185. Two other men were identified by A.H.D. as possibly being the biological father of K.R.D. One was excluded by DNA evidence, and the other, B.L., could not be located.

M.J.D., III, and T.C.-M.D. were taken into State's custody on January 9, 2018 and were returned to the care of their parents on February 12, 2019. The instant investigation was started after K.R.D. was diagnosed with failure to thrive. She weighed only ten pounds at five months of age. K.R.D. received home health care, and one of the nurses expressed concern about the housing situation. An investigation by DCFS revealed that fourteen people were residing in the three-bedroom trailer home.[1] The home had electrical problems that caused the lights to flicker off and on and damaged several appliances. There were exposed electrical wires within the reach of the children. There was a water leak in the living room, and mold was growing there. There were holes in the floor of the kitchen. The investigator also noted that there were dead rats, rat feces, and dog feces in the home. All three children were noted to have soiled clothing. The home did not meet agency standards, and the children's living arrangements were deemed to be life-threatening. Several family members offered to take the children, but the couple refused. The couple were able to obtain a motel room for one night by borrowing money from a family member, but the three children were removed

---

[1] A.H.D. and M.J.D., Jr., were allowing another family of four adults and five children to reside with them. They stated that the family had nowhere to go and were going to help take care of M.J.D., III, T.C.-M.D., and K.R.D while A.H.D. and M.J.D., Jr., were at work.

from the home and entered foster care on or about June 6, 2019.[2] They were adjudicated children in need of care on August 6, 2019.[3]

Review hearings were held on November 21, 2019; May 19, 2020; September 29, 2020; and January 21, 2021, when the goal was changed from reunification to adoption. The judgment terminating the parental rights of A.H.D. and M.J.D., Jr., with respect to M.J.D., III; T.C.-M.D.; and K.R.D.; and B.L. with respect to K.R.D., and certifying the children for adoption was rendered in open court on September 30, 2021, and signed on October 25, 2021. Notice of judgment issued on Friday, October 29, 2021. The notice was mailed to A.H.D. and M.J.D., Jr., at their home address rather than to their attorneys of record.

On November 17, 2021, A.H.D. and M.J.D., Jr., filed motions for appeal. The State filed a motion to dismiss both appeals as untimely, alleging that that the motion for appeal had to be filed on or before November 15, 2021 (fifteen days after notice of judgment). A.H.D. and M.J.D., Jr., allege that the notice was insufficient to start the running of the time for appeal because the mailing of the notice of judgment was not sent to their counsel of record as required by La.Code Civ.P. art. 1913. The district court denied the motion to dismiss and issued orders of appeal. In its appellate brief, the State urges this court to dismiss the appeals as untimely on its own motion.

Notice of judgment "shall be mailed by the clerk of court . . . to the counsel of record for each party[.]" La.Code Civ.P. art. 1913(A). The delay for applying for a new trial commences to run the day "after the clerk has mailed or the sheriff

---

[2] The trailer burned down within days of the children being taken into State's custody.

[3] A.H.D. and M.J.D., Jr., stipulated that the children were in need of care without admitting the specific allegations.

has served the notice of judgment." La.Code Civ.P. art. 1974. "In evaluating the timeliness of an appeal in a termination of parental rights case, La. C.C.P. art. 1913, made applicable by La. Ch.C. art 332(B), requires only the *mailing* of a notice of judgment and the date of service, delivery, or *receipt of the notice is not determinative*." *State in the Interest of J.P.*, 21-1036, p. 4 (La.App. 1 Cir. 12/22/21), 339 So.3d 1187, 1189 (emphasis in original). "If notice of judgment is not furnished as required, the delay for seeking an appeal does not ordinarily begin to run." *Ouachita Equip. Rental, Inc. v. Dyer*, 386 So.2d 193, 194 (La.App. 3 Cir. 1980).

In termination of parental rights cases, the delay for applying for a new trial is three days, and the delay for taking an appeal is fifteen days from the date of mailing of the notice of judgment or from the denial of motion for new trial. La.Ch.Code art. 332. "Appeals are favored and should be not dismissed unless the law clearly so requires." *State in the Interest of D.M.H.,* 27,668, p. 1 (La.App. 2 Cir. 5/4/95), 658 So.2d 1309, 1310. In this case, there were no motions for new trial. But we again note that the notice of judgment was mailed to A.H.D. and M.J.D., Jr., and not to their attorneys of record. Since there was a failure to give the required notice, the delay for appeal did not begin to run even though A.H.D. and M.J.D., Jr., were given actual notice. La.Code Civ.P. arts. 1913 and 1974. Therefore, we agree with the trial court and find that the motions for appeal are timely.

## III.

## STANDARD OF REVIEW

"Whether termination of parental rights is warranted is a question of fact, and a district court's factual determinations will not be set aside in the absence of

manifest error." *State ex rel. H.A.B.*, 10-1111, p. 31 (La. 10/19/10), 49 So.3d 345, 368.

IV.

## LAW AND DISCUSSION

Louisiana Children's Code Article 1035(A) provides that "[t]he petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence." One ground for termination of parental rights is the "[a]bandonment of the child by placing him the physical custody of . . . the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parent responsibility by" failing "to provide significant contributions to the child's care and support for any period of six consecutive months" as of the time petition is filed. La.Ch.Code art. 1015(5)(b). Another ground is when "at least one year has elapsed since a child was removed from a parent's custody pursuant to a court order" and "there has been no substantial parental compliance with a case plan for services . . .; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future" with consideration given to the children's age and need for a safe, stable, and permanent home. La.Ch.Code art. 1015(6). "In a termination of parental rights case, DCFS must establish two factors: (1) one of the grounds listed in La.Ch.Code art. 1015 by clear and convincing evidence; and (2) that the termination of parental rights is in the children's best interest." *State in the Interest of B.W.*, 16-209, p. 7 (La.App. 3 Cir. 2/22/17), 212 So.3d 695, 699, *writ denied*, 17-528 (La. 4/13/17), 218 So.3d 627.

The trial court noted that the parents had another child after the three children were taken into State's custody and were currently living with A.H.D.'s father, P.D., in a three-bedroom home where he resides and is the lessee. P.D. pays the rent, and A.H.D. testified that they would not be able to afford the rent without P.D.'s assistance. P.D. has never met these three grandchildren. The testimony established that despite the passage of over two years, there were still multiple questions and concerns about whether the parents would be able to provide adequate, safe, and stable housing.

The evidence showed several failures of the parents to comply with their case plans. Despite being ordered to pay $284.50 in parental contributions from the time the children came in to the State's custody, neither parent ever made any payment toward the support of the three children. Neither of the parents objected to the parental contributions, but, at trial, M.J.D., Jr., testified that he had been employed by the City of Lake Charles for several years. A.H.D. was employed as a security guard at the time the children were taken into custody but became unemployed in August of 2020. The only reason given for non-payment of support was that M.J.D., Jr., thought that the children "should not have gotten taken away." A.H.D. testified that she did not know exactly why they were not paying any parental contributions. She further testified that they had purchased a camper, trailer, and boat since the children had been taken into custody. She did not know how much those items cost.

The parents went through parenting classes twice, but they did not receive "successful completion" certificates because it was recommended that they go a third time. One of the therapists providing services to one of the children asked that DCFS not allow A.H.D. to attend appointments because of A.H.D.'s behavior.

6

A.H.D. testified that DCFS always tells her that her three children are good but that "[i]t did not cross her mind" to ask how her children are doing in their day-to-day lives, what things they like, or what activities they are doing until she was asked about that at trial. A.H.D. and M.J.D., Jr., had not seen the children for about five months before the trial. A.H.D. and M.J.D., Jr., testified that they unsuccessfully tried to set up other visits. The DCFS caseworker testified that they attempted to call the parents to have visits in the months before the trial but did not get any response. Before COVID and Hurricane Laura, there were some face-to-face visits with the children, but the evidence is clear that A.H.D. and M.J.D., Jr., "did not take any steps toward improving [their] situation, which is the purpose of the case plan." *State in the Interest of B.W.*, 212 So.3d at 701.

Based on the evidence and testimony presented, the trial court found that the State met its burden of proving abandonment of the three minor children for the nonpayment of parental contribution, that there was no reasonable expectation of substantial compliance or improvement if additional time was allowed, and that termination of parental rights was in the best interest of the children.

We find no manifest error in the trial court's finding that DCFS met its burden of proof under La.Ch.Code art. 1015(5) and 1015(6) and move to consideration of whether the termination is in the best interest of the three minor children.

The Court Appointed Special Advocate (CASA) for the children and the caseworker from DCFS testified about each child's placement in their respective foster homes. M.J.D., III, is doing well in a gifted program at his elementary school and playing t-ball. He goes to speech therapy, and his foster parents are reinforcing what he learns at therapy. His foster parents want a permanent

placement for M.J.D., III, with them. M.J.D., III, has lived with someone other than his parents for more than half of his life.

T.C.-M.D. is in speech therapy. The CASA reported that T.C.-M.D. is always excited to show the CASA her room and dolls and how she can dance. She is very bonded with her foster parents and foster siblings. The foster parents want to adopt T.C.-M.D. T.C.-M.D. had been in the custody of someone other than her parents for forty out of fifty-five months at the time of trial.

K.R.D. has several medical problems and still cannot talk. She cannot go to daycare because of an autoimmune deficiency. K.R.D. goes to speech therapy and feeding therapy. She requires special food that is easy for her to swallow. Her foster mother is a nurse and is said to follow everything that K.R.D.'s therapists and doctors say "to the 'T.'" K.R.D. is also in an adoptive placement. K.R.D. left the custody of her parents when she a little over four months old and had been in the custody of someone other than her parents for twenty-seven out of thirty-three months at the time of trial.

> While the parents have a natural, fundamental liberty interest in the continuing companionship, care, custody and management of their children [. . .] the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. *Lehman v. Lycoming County Children's Servs. Agency*, 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982). In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent. *State in the Interest of G.J.L. and M.M.L.*,791 So.2d at 85; *See also State in the Interest of C.J.K. and K.K.*, 774 So.2d at 113 [. . .] ; *State in the Interest of S.M*, 98–0922 (La. 10/20/98), 719 So.2d 445, 452.

*State ex rel. J.M.*, 02-2089, p. 8 (La. 1/28/03), 837 So.2d 1247, 1252.

Accordingly, we find no manifest error in the trial court's determination that the

termination of the parental rights of A.H.D. and M.J.D., Jr., was in the best interests of these three children.

## V.

## <u>CONCLUSION</u>

The judgment of the trial court is affirmed.  All costs are assessed to A.H.D. and M.J.D., Jr.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3 Uniform Rules, Courts of Appeal.