MEMORANDUM OF DECISION
This is an action for termination of parental rights brought by the Commissioner of the Department of Children and Families (DCF).
DCF is seeking to terminate the parental rights of the biological mother, Sharon W., the biological father of Anndre'ya, Andrew M., and the biological father of Alexis, Gerald C.
PROCEDURAL BACKGROUND
On May 16, 1995, DCF filed neglect petitions and sought an Order of Temporary Custody alleging that Anndre'ya and Alexis were neglected in that the children had been permitted to live under conditions, circumstances or associations injurious to their well-being. The OTC was granted on May 26, 1995 and on September 22, 1995, the court adjudicated the children neglected and committed them to the care and custody of DCF.
On March 18, 1999, the court found that continuing efforts to reunite the family were no longer appropriate with regard to all of the parents.
On July 8, 1999, DCF filed a petition for termination of parental rights of the respondent parents. With regard to the mother, the CT Page 6000 petitioner alleged that there is no ongoing parent-child relationship with the mother that ordinarily develops as a result of a parent having met on a continuing basis the physical, emotional, moral or educational needs of the children and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the children. Conn. Gen. Stat. § 17a-112
(3)(c)(D). The petitioner also alleged that the children had been found in a prior proceeding to have been neglected and the mother had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the needs and age of the children, she could assume a responsible position in the lives of the children. Conn. Gen. Stat. § 17a-112 (c)(3)(B).
With regard to the respondent fathers, Andrew M. and Gerald C., the petitioner alleged that there is no ongoing parent-child relationship with the fathers that ordinarily develops as a result of a parent having met on a continuing basis, the physical, emotional, moral, or educational needs of the children and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the children. Conn. Gen. Stat.
§ 17a-112 (c)(3)(D). The petitioner also alleged that the children had been abandoned in the sense that the parents failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the children. Conn. Gen. Stat. § 17a-112 (c)(3)(A).
On March 14, 2000, the mother consented to termination of her parental rights with regard to both children. The consents, however, were contingent upon the fathers' parental rights being terminated also. Her consent was to have no force or effect if the child's father's parental rights were not terminated at trial.
Gerald C. has never appeared in this case despite having received proper statutory notice.
On the first day of trial, counsel for Andrew M. moved to withdraw on the grounds that his client no longer wanted him to represent him. After canvassing the father, and explaining to him that new counsel would not be appointed for him and that he would be given one month to find new counsel or prepare to represent himself, the court granted the motion to withdraw and suspended the trial for one month.
For the reasons stated below, the court hereby terminates the parental rights of Gerald C. and Sharon W. to Alexis and dismisses the termination petition for Anndre'ya with regard to Andrew M. and Sharon W.
FACTUAL FINDINGS
CT Page 6001
The court makes the following findings by clear and convincing evidence.
Andrew M. has been incarcerated since 1993. In 1996, he was sentenced to thirty years in federal prison.
When the children were initially placed in foster care, Andrew did have visitation with his child, Anndre'ya, on a regular basis while he was incarcerated in Connecticut. Between March of 1996 and November of 1996, Andrew did not have any contact with the Department. In November of 1996, he wrote DCF informing it that he had been transferred to federal prison in Pennsylvania. Andrew continued to intermittently correspond with DCF seeking information about his daughter and asking that cards be forwarded to her. In his letters, he complained on several occasions that it was difficult to keep up correspondence because he was not receiving information back from DCF. In 1998, he began to correspond more regularly, and upon learning the phone number of the foster family, began to call and speak directly with his daughter. He also sent the child several gifts.
Gerald C. has never met his child, Alexis, and has never had any contact with her or DCF.
Anndre'ya and Alexis have lived together in the same foster home since July of 1995. Their foster parents have provided a wonderful life for these children and would like to adopt them. The children view their foster parents as their psychological parents and are closely bonded with them.
ADJUDICATION
A. Reunification
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that DCF "has made reasonable efforts to locate the parent and to reunify the child with the parent unless the court finds in this proceeding that this parent is unable or unwilling to benefit from reunification efforts." Conn. Gen. Stat. § 17a-112
(c)(1). The court need not make such a finding, however, if a court has determined at a hearing pursuant to subsection (b) of § 17a-110 that such efforts are not appropriate. On March 18, 1999, the court made the requisite finding that further efforts to reunify the parents with their children were not appropriate.
B. Statutory Grounds
CT Page 6002
To prevail in a non-consensual termination of parental rights case, DCF must also prove by clear and convincing evidence that one of several statutory grounds for termination exists. See In re Michael B.,49 Conn. App. 510, 512 (1998); Conn. Gen. Stat. § 17a-112 (c)(3). In this adjudicatory phase, the court is limited to events preceding the filing of the petition or the latest amendment. Practice Book § 33-3
(a). The relevant date in this case is July 8, 1999.
NO ONGOING PARENT/CHILD RELATIONSHIP
Petitioner alleges that Andrew M. and Gerald C. have no ongoing parent/child relationship that ordinarily develops as the result of the parent having met on a day-to-day basis, the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent/child relationship would be detrimental to the best interest of the child. Conn. Gen. Stat. §17a-112 (c)(3)(D). The Connecticut Supreme Court in In re Jessica M.,217 Conn. 459 (1991) found that termination on these grounds is inappropriate unless "the child has no present memories or feelings for the natural parent" or that if such child does have some memories, "no positive emotional aspects of the relationship survive." Id. at 468-70.
With regard to Andrew M., no expert testimony was presented regarding how the child feels about her father. Additionally, as of the relevant adjudicatory date, Andrew and Anndree'ya were having phone conversations and neither DCF nor the foster parents had taken any steps to prevent that contact. Additionally, no factual evidence was presented that no positive emotional aspects of the relationship survive.
Based on all of the evidence presented, the court finds that DCF has failed to sustain its burden by clear and convincing evidence that no parent/child relationship exists between Anndre'ya and her father.
The undisputed evidence regarding Gerald and Alexis is that they have never had any contact. Alexis is now five years old. Accordingly, the court finds by clear and convincing evidence that no parent/child relationship exists between Alexis and her father.
Because the court has determined that no parent/child relationship exists, it must next consider whether to allow further time to develop such a relationship would be detrimental to the best interest of the child.
"There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current `home,' under the care of his parents or foster parents, especially when CT Page 6003 such uncertainty is prolonged." Lehman v. Lycoming County Children'sServices, supra, 458 U.S. 502, 513 (1982). Because this father has never had any contact with his child or DCF, to allow further time for him to develop a relationship with Alexis would be not only detrimental but also futile.
For all the foregoing reasons, the court finds by clear and convincing evidence that Alexis has no ongoing parent/child relationship with Gerald C. within the meaning of the statute.
ABANDONMENT
 Conn. Gen. Stat. § 17a-112 (c)(3)(A) provides that a ground for termination exists when "the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child." "Attempts to achieve contact with the child, telephone calls, the sending of cards and gifts, and financial support are indicia of `interest, concern or responsibility' for the welfare of the child." Inre Migdalia, 6 Conn. App. 194, 208-209, cert. denied, 199 Conn. 809
(1986). "Conversely, where a parent fails to visit a child, fails to display any level of affection for the child, has no personal interaction with the child, and no concern for the child's welfare, statutory abandonment has occurred." Id. at 209.
"There are five general obligations to parenthood: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to provide social and religious guidance." In re Juvenile Appeal (Docket No. 9489), 183 Conn. 11,14 (1981).
This court is mindful of the language in In re Juvenile Appeal,187 Conn. 431, 443 (1982), that imprisonment alone does not constitute abandonment. A close reading of this case and the cases cited therein to support this proposition make clear, however, that while incarceration per se is not sufficient to constitute abandonment, it should also not foreclose the possibility of making such a finding. The voluntary illegal acts that lead to a period of separation of the parent from the child can and should be considered as a factor in determining whether or not there has been abandonment. Id. at 442. Just as in all abandonment cases, the court should also consider in the case of a incarcerated parent, what efforts the parent has made to maintain contact with the child, express love and affection for the child, express concern regarding the well-being of the child, provide financial assistance if CT Page 6004 possible and furnish appropriate religious and social guidance.
Having reviewed the correspondence and the testimony regarding Andrew's efforts to stay in contact with his daughter, the court cannot find that the petitioner has proven by clear and convincing evidence that Andrew has abandoned his child. Instead, it appears that he has taken advantage of what limited resources were available to him while incarcerated to maintain contact with Anndre'ya. Furthermore, his contact with the child has increased over time. He has regularly expressed love and affection for her and has expressed concern over her well-being. For all these reasons, this court dismisses the petition with regard to Andrew M.[2] Because the petition has been dismissed with regard to Andrew M., and his rights have not been terminated, the court also makes a finding that the consent the mother signed with regard to Anndre'ya is not binding and that her rights are not terminated with regard to Anndre'ya.
Because Gerald has never had any contact with his child, the court finds by clear and convincing evidence that he has abandoned her within the meaning of the statute.
MANDATORY FINDINGS
With respect to the mandatory factual findings required by Conn. Gen.Stat. § 17a-112 (d), except in the case where termination is based on consent, the court makes the following findings with regard to Gerald C.:
1. The timely nature and extent of services offered, provided and made available to the parent and child by an agency to facilitate the reunion of the child with the parent.
This father has never had any contact with his child or DCF. Therefore, the Department had no ability to provide him with any services.
2. Whether DCF has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980.
This father has never had any contact with his child or DCF. Therefore, the Department could not make any efforts to reunite the family.
3. The terms of any applicable court order entered into and agreed to by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order. CT Page 6005
The court is not aware of any orders regarding this father.
4. The feelings and emotional ties of the children with respect to their parents, any guardian and any person who has exercised physical care, custody or control of the children for at least one year and with whom the children have developed significant emotional ties.
Alexis is firmly bonded with her foster family who would like to adopt her.
5. Ages of the children.
Alexis is five years old.
6. The efforts the parent has made to adjust his circumstances or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (a) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to the incidental visitations, communications, contributions, (b) the maintenance of regular contact or communication with the guardian or other custodian of the child.
This father has done nothing to change his circumstances.
7. The extent to which a parent has been prevented from maintaining a relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person, or by economic circumstances of the parent.
DCF has not engaged in any unreasonable conduct.
DISPOSITION
In the dispositional phase of a termination case, the court must consider whether DCF has proven by clear and convincing evidence that "termination is in the best interest of the child." Conn. Gen. Stat.
§ 17a-112 (c)(2). The court can consider all events occurring through the close of the dispositional hearing. Practice Book § 33-5.
The court finds by clear and convincing evidence that it is in Alexis' best interest for a termination of parental rights to enter with respect to Gerald C.[3] Gerald C. has never had any contact with his daughter.
Alexis deserves permanency and it is clearly in her best interest to terminate the parental rights of Gerald in order to allow her to be CT Page 6006 adopted by her foster family.
Accordingly, a termination of parental rights of Gerald C. is ordered. It is further ordered that the Commissioner of DCF be appointed statutory parent for this child for the purpose of securing an adoptive home. The Commissioner shall file with this court no later than 60 days following the date of judgment, a written report of efforts to effect such permanent placement and file further reports as are required by state and federal law.
 CHASE T. ROGERS JUDGE OF THE SUPERIOR COURT