945 So.2d 304 (2006)
STATE of Louisiana in the Interest of S.L.J.
No. 41,808-JAC.
Court of Appeal of Louisiana, Second Circuit.
December 13, 2006.
Darrell R. Avery, Jonesboro, for Appellant, T.J. (Father of S.L.J.).
Henry P. Garner, Jr., for Appellee, K.M.S.J. (Mother of S.L.J.).
James E. Beal, Jonesboro, for Appellee, Confidential Party, S.L.J.
Pamela Harper-Jacob, for Appellee, State of Louisiana Department of Social Services.
Before BROWN, LOLLEY, SEXTON (Pro Tempore), JJ.
LOLLEY, J.
Plaintiff, T.J., appeals from a decision of the Second Judicial District Court, Parish of Claiborne, State of Louisiana, which after a hearing, terminated his parental rights as to his daughter, S.L.J. For the following reasons, we affirm.

FACTS
T.J. is the father of S.L.J., a female child born July 14, 1992. In June 2001, T.J. was charged with and pled guilty to the aggravated incest of S.L.J. Pursuant to a plea agreement, T.J. received concurrent 10-year hard labor sentences imposed without benefit of parole or "good time." According to the record, T.J. is prohibited from having any contact with his minor children.
*305 S.L.J. was adjudicated a child in need of care on April 18, 2001, and placed in the custody of the Louisiana Department of Social Services ("LDSS") at that time. In April 2005, LDSS filed a petition to terminate T.J.'s parental rights. Citing La. Ch. C. art. 1015(3), LDSS alleged that it was in the best interest of S.L.J. for the trial court to terminate T.J.'s parental rights.
In November 2005, T.J. was evaluated by a counseling psychologist, Dr. John C. Simoneaux. Simoneaux conducted an extensive interview with T.J. and based upon the results of the tests and T.J.'s criminal history, he classified him as a pedophile and a paranoid schizophrenic under the Diagnostic and Statistical ManualIV (DSM-IV). The diagnosis further noted that T.J. had an antisocial personality disorder and a schizoid personality disorder. Simoneaux concluded that T.J. "could [not] conceivab[ly] serve as an adequate parent to his children" and noted that he saw:
virtually no chance that [TJ's] condition will improve any time in the near future to significantly and positively affect his ability to serve as a positive force for [SLJ]. Psychological testing, along with the clinical interview, suggest that [TJ] is very unstable, that his attitudes about parenting are worrisome, and that he may even suffer from a thought disorder. The medication that he is taking is not effective. At this time I cannot recommend any contact whatsoever.
Despite the fact that T.J. was ordered not to have contact with his children, less than 30 days after Simoneaux interviewed him, T.J. unsuccessfully attempted to send a disturbing Christmas card to the children. A copy of the card was introduced into evidence.
On June 15, 2006, the trial court held a hearing to determine whether to terminate T.J.'s parental rights. At the close of the hearing, the state and attorneys for S.L.J. argued that T.J.'s parental rights should be terminated; the state noted that this would free S.L.J. to be adopted. T.J. argued against termination, noting Simoneaux's alleged equivocation about whether termination would be in S.L.J.'s best interest and noting that T.J.'s avenues for contact with S.L.J. were cut off because of his closely monitored incarceration. Finally, T.J. argued that S.L.J. would be 18 years old when T.J. got out of prison and could decide at that time, as an adult, whether to have contact with T.J.
The trial court concluded that the evidence was sufficient to terminate T.J.'s parental rights, noting that T.J. had admitted to the rape of the child, the psychologist had specifically recommended T.J.'s parental rights be terminated, and termination would be beneficial to the child's mental and emotional stability. This appeal ensued.

LAW AND DISCUSSION
T.J. complains that the trial court erred in finding that the state proved by clear and convincing evidence that the termination of his parental rights was in the best interest of S.L.J. In State ex rel. J.A., 99-2905 (La.01/12/00), 752 So.2d 806, 811, the supreme court explained the procedure for terminating a person's parental rights:
Title X of the Children's Code governs the involuntary termination of parental rights. La. Child. Code art. 1015 provides the statutory grounds by which a court may involuntarily terminate the rights and privileges of parents. The State need establish only one ground, La. Child. Code art. 1015, but the judge must also find that the termination is in the best interest of the child. La. Child. Code art. 1039. (Citation omitted.) Additionally, the State must prove the elements of one of the enumerated grounds *306 by clear and convincing evidence to sever the parental bond. La. Child. Code art. 1035(A); Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (holding that the minimum standard of proof in termination of parental rights cases is clear and convincing evidence).
Louisiana Ch. C. art. 1037 provides, in part:
B. When the court finds that the alleged grounds set out in any Paragraph of Article 1015 are proven by the evidentiary standards required by Article 1035 and that it is in the best interests of the child, it shall order the termination of the parental rights of the parent against whom the allegations are proven. The court shall enter written findings on both issues. The consideration of best interests of the child shall include consideration of the child's attachment to his current caretakers.
Louisiana Ch. C. Art. 1015 provides, in part:
The grounds for termination of parental rights are:
. . . .
(3) Misconduct of the parent toward this child or any other child of the parent or any other child in his household which constitutes extreme abuse, cruel and inhuman treatment, or grossly negligent behavior below a reasonable standard of human decency, including but not limited to the conviction, commission, aiding or abetting, attempting, conspiring, or soliciting to commit any of the following:
. . . .
(c) Aggravated incest.
. . . .
(i) Abuse or neglect which is chronic, life threatening, or results in gravely disabling physical or psychological injury or disfigurement.
In termination of parental rights cases, the trial court's factual findings are subject to the manifest error standard of review. State in the Interest of S.D. v. Moore, 31,192 (La.App.2d Cir.08/19/98), 717 So.2d 265.
In this case, it was conclusively shown that T.J. perpetrated aggravated incest upon S.L.J. Simoneaux, accepted as an expert in the field of psychology, examined T.J. in connection with this proceeding and was of the opinion that T.J. was both psychotic and schizophrenic and had a very poor prognosis for recovery from those conditions, despite the multiple anti-psychotic medications he was taking. Simoneaux further testified at the hearing about his evaluation of T.J and among other things, Simoneaux stated that:
Unless you can control all the parameters, then contact between a sexual abuse victim and a perpetrator almost always results in a negative . . . impact on the victim. So, I typically don't recommend that at all.
On the question of whether T.J.'s parental rights should be terminated as to S.L.J., Simoneaux said, "[i]t would seem the natural thing to think about termination and freeing the child up to go on and develop a more healthy lifestyle." On cross-examination, Simoneaux opined that preventing contact between T.J. and S.L.J. would also have many of the benefits of terminating T.J.'s parental rights. He also noted that "I think it is very, very unlikely that there would be a scenario that would make it advantageous to not terminate parental rights."
Carolyn McCharen, S.L.J.'s case manager, testified that S.L.J. was doing well, personally, academically and socially since August 2005 when S.L.J. was reunited with her mother. The final witness at the *307 hearing was Annette Jefferson, a child welfare specialist who had worked with S.L.J.'s family. She testified that she had given a form "TPR2" to T.J. used to establish a plan for the child during the parent's incarceration that included information about the termination of parental rights. See La. Ch. C. art. 1036.2. Jefferson said that T.J. had offered his parents and his sister as alternative care givers for S.L.J. during T.J.'s incarceration. LDSS conducted home studies of T.J.'s parents and sister and disapproved placement with T.J.'s parents. LDSS approved T.J.'s sister and T.J.'s children (including S.L.J.) were placed in her home briefly until T.J. was convicted, at which time the sister's family requested that the children be removed. T.J. offered no other placement alternatives for his children.
We wholly reject T.J.'s argument that his incarceration until S.L.J. reaches the age of majority weighs against terminating T.J.'s parental rights. As pointed out in the appellate brief filed by S.L.J.'s mother, even during T.J.'s time in prison, S.L.J. would hypothetically be required in either tutorship proceedings or emancipation proceedings to respond to T.J. as a party unless T.J.'s parental rights are terminated. Further, even after S.L.J. attains majority, she could be responsible to T.J. for alimony under La. C.C. art. 229 unless their relationship is legally severed.
Despite the apparent present practical absence of T.J.'s ability to exercise his authority, we find that the LDSS proved conclusively that imposition of these duties upon S.L.J. would be a gross disservice to the child because of the persistent, severe and harmful nature of T.J.'s mental illness. After a thorough review of the record, we have no doubt that the state established clear and convincing evidence for the termination of parental rights.
The heinous nature of T.J.'s criminal conduct is the direct cause of injury to S.L.J. Termination of T.J.'s parental rights is the only certain method to remove even the scintilla of a possibility that T.J., a paranoid schizophrenic pedophile, could ever exercise authority over the very child, his own child, he so cruelly abused. We find no manifest error in the trial court's conclusion that LDSS proved by clear and convincing evidence that termination of T.J.'s parental rights over S.L.J. was in the child's best interest.

CONCLUSION
On review, we affirm the ruling of the trial court ordering the termination of T.J.'s parental rights as to S.L.J.
AFFIRMED.