998 So.2d 681 (2008)
STATE of Louisiana in the Interest of D.L.R.
No. 2008-CJ-1541.
Supreme Court of Louisiana.
December 12, 2008.
James D. Caldwell, Attorney General, Nicholas Pizzolatto, Jr., Assistant Attorney General, for applicant.
*682 Edward Kelly Bauman, David Jefferson Williams, Lake Charles, for respondent.
CALOGERO, Chief Justice.
We granted writs in this termination of paternal rights proceeding to consider whether the court of appeal properly reversed a district court judgment terminating the parental rights of T.D.J.,[1] mother of D.L.R., a child who was previously adjudicated a child in need of care after being diagnosed with "shaken baby syndrome."[2] Although the court of appeal decision is based on its review of only part of the record, the court of appeal determined that termination of T.D.J.'s parental rights was not warranted because the State of Louisiana, Office of Child Services (hereinafter either "OCS" or "the State"), failed to carry its burden of proof. Specifically, the court of appeal found that OCS failed to establish by the required clear and convincing evidence that T.D.J. did not comply with requirements for reunification set forth in the OCS case plan agreed to by T.D.J. and approved by the district court. Finding that the court of appeal improperly substituted its judgment for that of the district court without first finding manifest error, we reverse the decision of the court of appeal and reinstate the well-reasoned decision of the district court that terminated T.D.J.'s parental rights to her child, D.L.R.

FACTS AND PROCEDURAL HISTORY
D.L.R. is a male child born in California on June 5, 2004, as the result of an extramarital relationship between his mother, T.D.J., and his alleged father, J.L.R. T.D.J. and J.L.R. did not live together after D.L.R.'s birth, and T.D.J. retained custody of the child. On May 24, 2005, D.L.R. suffered serious permanent injuries that were later diagnosed as "shaken baby syndrome," while in the physical custody of T.D.J.'s live-in boyfriend, S.B. T.D.J. was not present at the time of the incident. On the day after the incident, May 25, 2005, an instanter order was issued temporarily placing D.L.R. in the physical custody of OCS, who placed him into foster care in the home of his paternal grandparents.[3]
On June 24, 2005, T.D.J. and representatives of OCS entered into a case plan that listed the "permanent plan" for the family as "reunification." The case plan imposed the following goals that T.D.J. would have to meet in order for the permanent plan of reunification to become a reality: (1) "provide a safe and stable home environment for her child," (2) "become a more responsible parent to her [child] and parent [him] in ways that do not involve abuse/neglect," (3) "cooperate with the agency," and (4) "develop and maintain a positive and loving relationship with her [child]." The plan also included specific actions that T.D.J. would be required to take in order be considered to have achieved the goals. For example, in order to achieve the first goal, T.D.J. was required, among other things, both "to provide the case manager with the location of the home" and to *683 "maintain legal and stable income to support her child." Further, in order to achieve the second goal, T.D.J. was required to "attend, participate, and successfully complete" parenting classes, anger management classes, and domestic violence classes "provided by an OCS recommended agency and follow all recommendations of the instructor." In order to achieve the third goal, T.D.J. was required to "keep the agency informed of all changes in her situation as well as her whereabouts at all times including mailing and physical address and a phone number where she can be reached." The case plan also stated as follows; "In the event reunification cannot be achieved, permanency for [D.L.R.] will be achieved by May 2006," which was one year after the incident of abuse. The case plan therefore set forth an "alternative plan of relative placement," and an "alternative plan for adoption."
On September 7, 2005, the district court issued a judgment adjudicating D.L.R. a "neglected child in need of care." According to the judgment, D.L.R.'s parents admitted to the "allegations of the petition and stipulated that the [child is] in need of care." The judgment ordered that the OCS maintain custody of D.L.R., and specifically advised his parents to "comply with all of the requirements of the case plan dated June 24, 2005 . . . and correct the conditions requiring the [child] be placed in care." The judgment further found that the June 24, 2005, case plan with the goal of reunification was consistent with D.L.R.'s health and safety and in his best interest. Thus, the district court approved the case plan and ordered the parties to comply with the case plan, which was made part of the orders of the court.
In November and December of 2005, an administrative review was performed that resulted in a report to the district court, which on December 15, 2005, issued a Case Review Judgment very similar to the September 7, 2005, judgment. The court report produced by OCS for this review indicates that D.L.R.'s father had "written a letter stating that he does not want to work a case plan because he does not want to deal with OCS." The report also indicates that the primary reason D.L.R. was removed from T.D.J.'s custody was her refusal to leave S.B.'s house and her insistence that S.B. did not hurt D.L.R. The report also indicated that T.D.J. was continuing her relationship with S.B. Also of concern was T.D.J.'s "minimal" compliance with her case plan. For example, T.D.J. had attended and completed a "parenting seminar," but had not attended the "nurturing parenting course" OCS had recommended and approved, which she said was too long, and had not talked to her case manager about the seminar before attending. Additionally, T.D.J. had attended a three and one-half hour unapproved anger education class, but was one hour late, was unspecific about her reasons for attending the class, and had avoided answering questions, such that the instructor stated that her participation was minimal. T.D.J. had not attended the recommended and approved anger management course or the domestic violence classes, had not submitted to a substance abuse assessment, and had not submitted to a psychological evaluation.
The case was next reviewed in May and June of 2006. The documents prepared during this review indicate concern about the stability of T.D.J.'s housing and employment, as well as some continued concern about her continued relationship with S.B. The report details at least five addresses where T.D.J. lived during the three-month period between March of 2006 and June of 2006, and states that T.D.J. had failed to notify OCS about the start or termination of employment for several *684 jobs. The reports also document the results of T.D.J.'s psychological assessment, which indicated that the prospects of reunification with T.D.J. as the primary caregiver during the foreseeable future were "somewhat bleak without placing the child at above average levels of risk of abuse and neglect." Regarding her relationship with S.B., the report notes that T.D.J. stated that she had not had a relationship with him since July 2005, but that she later admitted that she lived with him until April of 2006. The report also details other reasons OCS representatives believed T.D.J. continued her relationship with S.B. long after D.L.R. was removed from her physical custody, including the fact that they reported the same addresses respectively. At the family team conference that occurred in conjunction with the May/June 2006 administrative review, the case plan goal was changed to adoption. The report of the conference indicates that T.D.J. was notified of the conference and that an OCS representative discussed the plan with her prior to the conference, but that she did not attend.
On July 25, 2006, OCS filed a Petition for Certification for Adoption and Termination of Parental Rights, seeking termination of the parental rights of D.L.R.'s parents under La. Ch.Code art. 1015(4) and (5). La. Ch.Code art. 1015(4) refers primarily to abandonment, and thus applies to D.L.R.'s father, who never agreed to cooperate with OCS. However, La. Ch. Code art. 1015(5) refers to noncompliance with the case plan, and thus applies to T.D.J. The petition detailed T.D.J.'s continued association with S.B. and set forth the following "nonexclusive reasons" for termination of her parental rights:
1. The mother and alleged father have failed to avail themselves of services offered.
2. The mother, [T.D.J.], has only attended one (1) parenting class as her attempt to comply with the case plans, and that was at an unapproved facility.
The mother attended only a one (1) day anger management class
The mother refused to complete the domestic violence course.
The mother refuses to stop seeing the boyfriend who physically abused her child.
3. The child has been in the State's custody for over one year. He needs a stable and permanent home and cannot wait any longer for [his] mother to rehabilitate.
Trial was held on June 21, 2007. During the trial, testimony was received from T.D.J. and the following witnesses: Charlotte Butler, a licensed clinical social worker who evaluated T.D.J.; Molly Larson, a licensed professional counselor who conducted the anger education course T.D.J. attended; Dr. Alfred Buxton, a clinical and medical psychologist who did a psychological assessment of T.D.J.; and Wendy Sprigg, the original foster care worker in this case and later supervisor of the case.
Following the trial, the district court issued a judgment terminating T.D.J.'s parental rights. In written reasons for judgment, the district court found grounds for the involuntary termination of parental rights, as set forth La. Ch.Code art. 1015(5).[4] The district court further relied *685 on the following pertinent portions of La. Ch.Code art. 1036, relative to "Proof of Parental Misconduct":
C. Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
* * * * *
(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.
* * * * *
(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.
(7) The persistence of conditions that led to removal or similar potentially harmful conditions.
D. Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:
* * * * *
(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.
The district court noted that once OCS proved any ground for involuntary termination, the court was required to determine the best interest of the child. State ex rel. S.L.J., 41,808, p. 6 (La.App. 2 Cir. 12/13/06), 945 So.2d 304, 307.
Noting that the record in child in need of care proceedings, as well as reports for persons who had evaluated T.D.J., had been introduced at trial, the district court stated that D.L.R. had been in the State's custody for 14 consecutive months at the time the petition was filed and for 25 months at the time of trial. The district court then found that T.D.J. had failed to comply with the specific requirements for reunification set forth in her case plan, including the following requirements:
[T.D.J.] has never attended a parenting program acceptable to OCS, saying the OCS program was too long.
[T.D.J.] has never attended an Anger Management program acceptable to OCS, saying the OCS program was too long. In fact the program [T.D.J.] attended was not an anger management program but an anger education program.
Molly Larson, anger education program teacher said [T.D.J.] needed individual counseling that [T.D.J.] did not attend.
Dr. Alfred Buxton stated [T.D.J.] needed individual counsel to address many issues. [T.D.J.] declared she did not need counseling.
Charlotte Butler recommended further counseling for [T.D.J.] but [T.D.J.] said she did not need it.
[T.D.J.] has not maintained a stable residence in that she has had 5 residences in the last 24 months.
*686 The district court also noted that T.D.J. suffered from mental conditions that require long-term treatment, but has consistently refused the necessary help. Finally, the district court described Dr. Buxton's concerns that D.L.R. has very special needs caused by his very traumatic injury that will require extensive medical attention that prevent T.D.J. from being primary caretaker.
The district court found that there was no reasonable expectation of parental compliance with a case plan and that 24 months is "long enough." Citing La. Ch. Code art. 1037,[5] the district court found that it was in D.L.R.'s best interest that T.D.J.'s parental rights be terminated pursuant to La. Ch.Code arts. 1015(5) and 1036.
The court of appeal reversed the district court judgment terminating T.D.J.'s parental rights. State ex re. D.L.R., 08-0124 (La.App. 3 Cir. 4/30/08), 986 So.2d 76. In its opinion, the court of appeal noted in a footnote that its review of this case was "severely hampered" by the fact that OCS filed the petition to terminate as a separate suit from the child in need of care proceedings[6] and the fact that the record on appeal did not contain the original pleadings or the original case management plan on which the petition to terminate was based.[7]Id. at 1 n. 3, 986 So.2d at 77 n. 3. Thus, the court of appeal stated that it was "left only with" subsequent documents prepared in monitoring the original case management plan and testimony of various individuals at trial. Id.
In fact, the court of appeal's discussion of the record focused on one of those "subsequent documents," a report prepared in November of 2006, which stated that T.D.J. had completed some specific recommended services, including a parenting class, anger management, an assessment by "LCADC," a psychological evaluation, a common sense parenting class, and domestic violence group counseling. Id. at 2, 986 So.2d at 78. The court of appeal also noted that the report stated that T.D.J. had changed her attitude toward S.B.'s role in causing D.L.R.'s injuries "sometime before the November 2006 conference," and that T.D.J. had "minimally complied" with the case plan. Id. The court of appeal then summarized the testimony of various witnesses. Id. The court of appeal noted that the State needs only to establish one of the statutory grounds for termination of parental rights, and that the district court must then find that the termination is in the best interest of the child. Id. at 10, 986 So.2d at 82. The court of appeal stressed that, under La. Ch.Code art. 1035(A), the State must prove one of the enumerated grounds by clear and convincing evidence. Id.
The court of appeal then found that the State did not establish by clear and convincing evidence that T.D.J. "violated the *687 provisions of La. Ch.Code art. 1036(5) and (7)."[8]Id. at 12, 986 So.2d at 84. In support of this conclusion, the court of appeal cited the November 2006 report and its conclusion that T.D.J. "successfully completed" a parenting class and "completed" both an anger education class and domestic violence counseling. Id. at 12, 986 So.2d at 84. According to the court of appeal, nothing in the report suggested that OCS was dissatisfied with T.D.J.'s efforts and the only evidence of dissatisfaction was the testimony of Ms. Sprigg, who complained that T.D.J. did not complete the particular parenting and anger management classes OCS recommended. Id. at 12-13, 986 So.2d at 84. Further, the court of appeal found that OCS's concern that T.D.J. continued to cohabit with S.B. was not established by clear and convincing evidence because the November 2006 report specifically states that T.D.J. had changed her mind about S.B.'s role in causing D.L.R.'s injuries. Id. at 13, 986 So.2d at 84.
The court of appeal further found that, even though the record contains complaints by OCS of other instances of noncompliance, those complaints did not constitute the basis for the termination of parental rights as set forth in the original petition, and those complaints were established only by "questionable proof." Id. The court of appeal considered Dr. Buxton's testimony that the OCS case plan did not meet T.D.J.'s needs because it did not provide training to assist her in meeting her sons's needs as "the most compelling evidence supporting rejection of the petition to terminate [T.D.J.'s] parental rights at this time." Id. Thus, the court of appeal found that the State failed to establish by clear and convincing evidence that "there is no reasonable expectation of significant improvement . . . in the near future," as required by La. Ch.Code art. 1015(5). Id.
Finally, the court of appeal found no clear and convincing evidence that termination of T.D.J.'s parental rights was in the best interest of D.L.R. because the record contained "no evidence even suggesting that the loss of what [T.D.J.] might be able to provide to her son with appropriate training would be replaced with a better situation." Id. at 14, 986 So.2d at 85. Thus, the court of appeal reversed the district court judgment terminating T.D.J.'s parental rights. Id. We granted OCS's application for supervisory writs. State ex rel. D.L.R., 08-1541 (La.7/16/08), 986 So.2d 68.

DISCUSSION
An appellate court reviews a trial court's findings as to whether parental rights should be terminated according to the manifest error standard. State ex rel. K.G. 02-2886, p. 4 (La.3/18/03), 841 So.2d 759, 762. This court has repeatedly set forth the concerns regarding the involuntary termination of parental rights by OCS, as follows:
In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great deference and vigilant protection under the law, and due process requires that a fundamentally fair procedure be followed when the state seeks to terminate the parent-child legal relationship. However, the *688 child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent.
The State's parens patriae power allows intervention in the parent-child relationship only under serious circumstances, such as where the State seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. As such, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven.
Title X of the Children's Code governs the involuntary termination of parental rights. La. Child. Code art. 1015 provides the statutory grounds by which a court may involuntarily terminate the rights and privileges of parents. The State need establish only one ground, La. Child. Code art. 1015, but the judge must also find that the termination is in the best interest of the child. La. Child. Code. art. 1039. Additionally, the State must prove the elements of one of the enumerated grounds by clear and convincing evidence to sever the parental bond. La. Child. Code art. 1035(A).
Id. at 4-5, 841 So.2d at 762-63 (citing State in the Interest of J.A., 99-2905 (La.1/12/00), 752 So.2d 806, 810-811; State ex rel. C.J.K., 00-2375 (La.11/28/00), 774 So.2d 107) (citations omitted).
As revealed by the above quotation, a court considering a petition to terminate parental rights must make two findings: (1) that OCS established one of the enumerated grounds for termination set forth in La. Ch.Code art. 1015 by clear and convincing evidence, and (2) that termination is in the best interest of the child. In this case, the district court properly made the two required findings.
When the court of appeal reversed the district court, it did so without finding that the district court was clearly wrong or manifestly erroneous. In fact, the court of appeal substituted its own view of the evidence for the view of the district court, and took this action despite its own admission that it did not have the entire record before it. The court of appeal decision in this case is based largely on the following evidence: (1) a November 2006 report that was prepared after OCS filed its petition to terminate parental rights and after the case plan goal had been changed from reunification to adoption, and (2) a couple of statements made by a single witness, Dr. Buxton, which were taken out of context. Further, the court of appeal apparently made no effort to secure the missing portions of the record, despite the fact that the district court judgment specifically noted that the child in need of care proceedings had been submitted as an exhibit at trial.
*689 Following its review of only a portion of the record in this case, the court of appeal found that OCS had failed to carry its burden of proof and that no record evidence indicates that termination of T.D.J.'s parental rights was in D.L.R.'s best interest. Regarding the OCS's burden of proof, the court of appeal improperly focused on whether OCS had proven the "nonexclusive reasons" for terminating parental rights set forth in Paragraph 6 of its petition. In so doing, the court of appeal ignored the fact that OCS's burden was to establish one of the grounds for terminating parental rights set forth in La. Ch. Code art. 1015. In fact, though it is not mentioned in the court of appeal opinion, OCS's petition states specifically in paragraph 4 that the parental rights of D.L.R.'s parents should be terminated under La. Ch.Code art. 1015(5). As the district court noted, La. Ch.Code art. 1015(5) establishes the following ground for the termination of parental rights;
Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home (emphasis added).
As previously stated, the case plan developed by OCS, with the agreement of T.D.J., required that T.D.J. attend and complete parenting classes, anger management classes, and domestic violence classes approved or recommended by OCS. Because the case plan included that requirement, OCS listed the classes that T.D.J. did complete, none of which were approved or recommended by OCS, as "nonexclusive reasons" for terminating T.D.J.'s parental rights. The OCS decision to focus on T.D.J.'s failure to comply with the education requirements set forth in the case plan is consistent with the requirement that the State prove only one ground for termination by clear and convincing evidence.
The district court's reasons for judgment in this case systematically considered the provisions of La. Ch.Code art. 1015(5) and concluded that OCS had proven by clear and convincing evidence lack of parental compliance with the case plan for a number of enumerated reasons. The first and second of those reasons were T.D.J.'s failure to attend parenting classes approved and recommended by OCS and T.D.J.'s failure to attend anger management classes approved and recommended by OCS. We have reviewed the entire record and find no manifest error in the district court's finding that OCS presented clear and convincing evidence that T.D.J. did not meet the education requirements of the case plan. T.D.J. herself admitted that she did not attend classes approved and recommended by OCS, but instead simply found some classes to attend, without inquiring whether those classes met the requirements of the case plan. Further, the record contains clear and convincing evidence that OCS required that T.D.J. undertake much longer and more comprehensive parenting and anger management classes than those selected by T.D.J. without OCS approval.[9]
*690 The district court judgment also enumerates several other reasons to support its finding that T.D.J. did not comply with her case management plan, including T.D.J.s refusal to undergo recommended counseling and her failure to maintain a stable residence. The court of appeal specifically found that the "record contains complaints by OCS of other instances of noncompliance (with the case plan), but these complaints did not constitute the basis for termination of parental rights as set forth in the state's original petition." However, because the "ground" set forth for termination of T.D.J.'s parental rights by the OCS was La. Ch.Code art. 1015(5), any proof of noncompliance did indeed constitute the basis for termination of T.D.J's parental rights set forth in the state's petition. Further, as noted by the district court, La. Ch.Code art. 1036, relative to "Proof of Parental Misconduct," sets forth in subsection (C) a number of actions that may be used as evidence of lack of parental compliance with a case plan. La. Ch.Code art. 1036 refers in subsection (3) to the "parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services," in subsection (5) to the "parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan," in subsection (6) to the "parent's lack of substantial improvement in redressing the problems preventing reunification," and in subsection (7) the "persistence of conditions that led to removal or similar potentially harmful conditions." The district court found that OCS had presented clear and convincing evidence to show lack of parental compliance in each of those areas. Further, contrary to the court of appeal's statement that OCS's complaints of "other instances of noncompliance" with the case plan "were established only by questionable proof," our review of the entire record in this case reveals no manifest error in the district court's finding that OCS established noncompliance by clear and convincing evidence, both because of T.D.J.'s failure to comply with the education requirements and her failure to comply in the other areas noted by the court of appeal. The fact that OCS did not include those instances of noncompliance in its list of "nonexclusive reasons" for terminating T.D.J.'s parental rights does not mean, as the court of appeal implied, that they are irrelevant to the question of whether OCS proved T.D.J's noncompliance with the case plan, which was the ground for termination pursuant to La. Ch.Code art. 1015(5) set forth in OCS's original petition.
The court of appeal's decision to reverse the district court decision is based largely on Dr. Buxton's testimony, which, the court of appeal said, provided the "most compelling evidence supporting rejection of the petition to terminate." Dr. Buxton did express some concern that the OCS case plan would not have prepared T.D.J. to be the primary caregiver for D.L.R. because it did not contain training to help her care for his special needs. However, that statement was not the main thrust of Dr. Buxton's testimony. Dr. Buxton also stated that T.D.J. should have taken some initiative to learn about her child's injury and how it might impact his *691 life, and that she should have consulted a physical therapist. Further, Dr. Buxton specifically expressed his opinion that T.D.J. did not have the "wherewithal" to care for D.L.R. because she could offer no information regarding the functioning of the child at the time he evaluated her. Dr. Buxton also recommended long-term counseling for T.D.J.; she refused.
Further, Ms. Sprigg's testimony indicated that T.D.J. would have received specific training to help her learn to care for the needs of her handicapped child had she attended the 12-week nurturing parenting course recommended and approved by OCS. In fact, had she attended that course, D.L.R. would have accompanied her to the classes, and she would have had opportunity to learn how to deal with some of his specific issues. Ms. Sprigg also testified that D.L.R.'s physical therapist, who was also his foster mother, had offered to meet with T.D.J. to help her learn how to perform the necessary physical therapy that D.L.R. required, but T.D.J. either refused or failed to take advantage of the opportunity to learn to care for her child's special needs.
In addition to its finding that OCS did not carry its burden of proof in this case, the court of appeal concluded, again without finding manifest error in the district court's finding, that the record contained no evidence "even suggesting that the loss of what [T.D.J] might be able to provide to her son with appropriate training would be replaced with a better situation." However, the fact that OCS had not yet found a possible adoptive parent does not necessarily mean that termination of T.D.J.'s parental rights was not in D.L.R.'s best interest. This court has previously stated as follows:
As recognized in Lehman v. Lycoming County Children's Serv.'s Agency, 458 U.S. 502, 513, 102 S.Ct. 3231, 3238, 73 L.Ed.2d 928 (1982), "It is undisputed that children require secure, stable, long-term, continuous relationships with their parents or foster parents." Very little is "as detrimental to a child's sound development as uncertainty over whether he is to remain in his current `home,' under the care of his parents or foster parents, especially when such uncertainty is prolonged."
State in the Interest of S.M., 98-0922, p. 16, (La.10/20/98), 719 So.2d 445, 453.
Under the facts and circumstances found in the record of this case, we find no manifest error in the district court's conclusion that termination of T.D.J.'s parental rights is in the best interest of D.L.R.

CONCLUSION
The court of appeal decision that reversed the district court judgment terminating T.D.J.'s parental rights to D.L.R. is hereby reversed. The district court judgment is reinstated.
COURT OF APPEAL DECISION REVERSED; DISTRICT COURT JUDGMENT REINSTATED.
NOTES
[1] Throughout its opinion, the court of appeal referred to the mother as T.W.J.
[2] Specifically, D.L.R. suffered a left frontal subdural hematoma, seizures, and bilateral retinal hemorrhaging as a result of the abuse. As a result, D.L.R. suffered a left hemispheric brain injury that affects his speech and vision, and causes both developmental delays and seizures.
[3] At some point, D.L.R. was removed from the home of his paternal grandparents because of problems between T.D.J. and the grandparents. D.L.R. was then placed as a foster child in the home of his physical therapist.
[4] La. Ch.Code art. 1015(5) provides as follows;

Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.
[5] La. Ch.Code art. 1037(B) provides as follows:

B. When the court finds that the alleged grounds set out in any Paragraph of Article 1015 are proven by the evidentiary standards required by Article 1035 and that it is in the best interests of the child, it shall order the termination of the parental rights of the parent against whom the allegations are proven. The court shall enter written findings on both issues. The consideration of best interests of the child shall include consideration of the child's attachment to his current caretakers.
[6] A local rule of the 14th Judicial District Court requires that a new docket number be issued when a Termination petition is filed.
[7] The original record in the child in need of care proceedings, including the original case plan were introduced in the trial court. The court of appeal apparently did not seek supplementation of the record with the missing record.
[8] OCS had pleaded violations of La. Ch.Code art. 1015(4) and (5), but the court of appeal concluded that the state's claim of non compliance arose under La. Ch.Code art. 1036(5) and (7).
[9] Ms. Sprigg testified that T.D.J. stated that the classes recommended and approved by OCS were "too long." The record contains some suggestion that T.D.J. would have been unable to work, as also required by the OCS case plan, had she taken the recommended and approved classes. However, the record is also clear that T.D.J. only worked eleven of the twenty-four months between the date D.L.R. was taken into the State's physical custody and the date of the trial. Thus, her failure to attend the recommended and approved classes is unexplained and is in violation of the OCS case plan to which she agreed.