Filed 10/30/14  In re A.M. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re A.M. et al., Persons Coming Under the Juvenile Court Law. | B254849 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> RAMON M., <br><br> Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK91750) |

APPEAL from orders of the Superior Court of Los Angeles County.  Carlos Vazquez, Judge.  Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

_____

Ramon M. (Father) appeals from the order of the juvenile court denying his petition for modification of custody and resumption of reunification services with respect to his daughters A.M. and H.M.[1] We affirm.

## FACTS AND PROCEEDINGS BELOW

In February 2012, a car driven by Father was involved in an accident. A.M., age 15 months, her sister H.M., age 3 months, and their mother were passengers in the car. Although no one was seriously injured, the Department of Children and Family Services (DCFS) detained the children because Father tested positive for methamphetamine. The children's maternal aunt, with whom the family had been living, told a DCFS worker that Father had a long history of drug use. She also told the worker that the parents engaged in physical assaults on each other and that this violence was affecting A.M.'s emotional wellbeing.

DCFS filed a petition to have the children declared dependents of the court under Welfare and Institutions Code section 300, subdivisions (a) and (b).[2] In March 2012, the court sustained the petition under section 300 subdivision (b) based on the parents' domestic violence and Father's history of drug use. The court ordered Father to complete a drug program with random testing and ordered both parents to attend parenting and domestic violence classes and individual counseling. Both parents were granted monitored visitation and family reunification services.

At the six-month review hearing in October 2012, the court ordered continued reunification services. The court found that the parents had consistently participated in visitation and had made progress in resolving the issues that led to their children's dependency.

---

[1] Father also noticed an appeal from the order terminating his parental rights. He has not briefed that issue so we do not consider it. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [failure to raise issue in brief waives issue on appeal].)

[2] All statutory references are to the Welfare and Institutions Code.

By the time of the twelve-month review in April 2013, mother had given birth to another daughter. DCFS petitioned to have the baby declared a dependent of the court based on her sisters' open case but the court dismissed the petition.

DCFS submitted the following information for the 12-month hearing as to A.M. and H.M., who remained in foster placement,.

Father failed to stay in contact with the agency or to provide it with his telephone number. He claimed to have completed 47 out of 52 domestic violence classes but failed to provide any documentation of this claim. There was verification, however, that Father was participating in individual counseling and, according to his counselor, had made "good progress in terms of recognizing his responsibility" in creating the situation with his children and "approaches his faults with a keen sense of wanting to insure himself he doesn't repeat the same mistakes he has in the past." Father was participating in an outpatient substance abuse program, domestic violence awareness, anger management, and individual counseling. His drug counselor reported that he had "learned new life skills" which allow him "to succeed in life and accomplish in getting his point of view across without . . . physical violence, verbal abuse or manipulation." Father was due to complete his domestic violence counseling in April 2013.

In its report DCFS expressed concern over Father's visitation and drug rehabilitation. Father's monitored visits with the children had become "sporadic[]." During his monitored visits, Father appeared to act appropriately with the children but he refused to feed them or change their diapers and asked the children's caregiver to perform those tasks. The children's worker attempted to set up additional monitored visits for Father during the week but Father responded that he could not visit the children on weekdays because of his busy work schedule. Subsequent reports from Father's drug counseling program informed DCFS that he had not participated in any of his programs, including drug testing, during the last two weeks of March 2013. Father told his counselor that he was unable to continue with his programs due to his work schedule.

3

The court found that Father was in partial compliance with the case plan and continued his family reunification services.

The 18-month review, scheduled for August 2013, was continued to the following month after DCFS received a report from Father's drug counseling program calling into question the veracity of the information previously supplied by Father's counselor. According to the program's new director "all of mother['s] and father's previous progress letters from their substance abuse counselors are not legitimate." An audit by the program revealed that Father's counselor gave Father the drug test dates in advance. The counselor was terminated. The court ordered DCFS to follow up on this information and to drug test Father between the date of this order and the rescheduled 18-month review in September 2013.

At the continued review, in September 2013, DCFS reported that "[s]ince the last Court hearing [in August 2013], both parents have not enrolled in any Court ordered programs and have continued to fail to stay in contact with DCFS." The record does not show that Father submitted to a drug test as ordered at the August 2013 hearing.

The court found that the parents "have not consistently and regularly contacted and visited with the [children], that they have not made significant progress in resolving the problems that led to the [children's] removal from the home, and that they have not demonstrated the capacity and ability both to complete the objectives of [their] treatment plan and to provide for the [children's] safety, protection, physical and emotional well-being, and special needs." Reunification services were terminated and a date for a permanent placement hearing was set.

In October 2013, the court again ordered DCFS to arrange weekly random drug testing of Father.

For the permanent planning hearing DCFS reported the following information. Father did not visit the children between January 2013 and October 2013. He visited the children five times between October 2013 and January 2014. He did not visit the children between January 21 and February 24, 2014 and called the foster mother once, on

4

February 7, 2014. The foster mother, who monitored some of Father's visits, stated that Father expressed little interest in what the children had been doing or what they were involved in at home or at school. The report stated that the foster parents wished to adopt the children.

On February 24, 2014, the date of the permanent planning hearing, Father filed a petition under section 388, requesting that the court vacate the hearing date, order the children placed with him and order family maintenance services. The petition alleged that Father "has resumed random testing and has tested negative since November 2013" and that "testing receipts are attached." The petition did not offer a reason why the requested actions would be in the children's best interest. The documents from a drug testing laboratory included with the petition show that Father submitted specimens for testing but they do not show the results of those tests.

DCFS opposed the petition on the grounds that Father had only recently resumed group counseling, did not complete individual counseling and failed to comply with his visitation schedule or keep in touch with the children's worker. The court continued the permanent planning hearing to March 5, 2014.

The hearings on the section 388 petition and the permanent plan were held on March 5, 2014, as scheduled.

The court began with the section 388 petition asking if anyone wanted to be heard on the matter. Father's counsel stated that the reason the court terminated Father's reunification services was because even though he had completed his programs he had stopped testing after he completed the drug program. Since then there has been a change in circumstances, counsel argued, because Father has resumed testing and has "consistently tested negative[.]" Counsel did not offer any witnesses in support of the petition. The children's counsel opposed the petition. She argued the case was well beyond the reunification timeframe, that Father had been inconsistent in his drug testing and in visiting the children and that it was in the best interests of the children to be adopted by their foster parents "who have seen them every day consistently since they

5

have been placed in their care [in February 2012]." Counsel for DCFS joined the argument by the children's counsel and reminded the court of the possible fraud in connection with the reports from the parents' counseling agency.

After hearing the arguments of counsel the court denied the section 388 petition "on the ground both that there has been no change in circumstances and that it would not be in the best interest of [the children]."

The court proceeded to the permanent planning hearing. Mother and Father testified that the court should refrain from terminating their parental rights based on the beneficial parent-child relationship and sibling relationship exceptions. (§ 366.26, subd. (c)(1)(B)(i), (v).) Mother testified that she currently has a child at home without an open dependency case. The child is a year and 2 months old and has remained in mother's care since birth. A.M. and H.M. had contact with their sister. Father testified that he had four children and lived with two of his children. He stated he visited A.M. and H.M. as much as he could and they were excited to see him. He told the court that he works full-time which limits his ability to visit but claimed that he had more than five visits in the past six months. The court found that none of the exceptions to the termination of parental rights applied and the permanent plan of adoption was appropriate.

Father filed a timely appeal from the order denying his section 388 petition and the order terminating his parental rights. (See fn. 1, *ante*.)

## DISCUSSION

Father challenges the order denying his section 388 petition on two grounds: that the court denied the petition without a full hearing and that the evidence established the requisite changed circumstances and best interests of the children. Neither ground has merit.

### A. The Court Afforded Father A Full Hearing On His Section 388 Petition.

Although the court has the authority to summarily deny a section 388 petition for failing to show a prima facie case for change (*In re Aljamie D.* (2000) 84 Cal.App.4th 424, 431), the court did not do so in this case. Instead, after Father filed his petition the court set the matter for a hearing in 10 days and asked DCFS to "make [its] best efforts to file a response to the 388 two days prior to the hearing." The record shows that the court did not preclude Father or any other witness from testifying in support of the petition. Father's counsel chose to rely solely on the evidence of Father's drug tests.

### B. The Court Did Not Abuse Its Discretion In Denying The Petition.

A parent seeking modification of an order under section 388 bears the burden of proving that a change of circumstances exists and that the proposed modification of the order is in the child's best interests. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) We will not reverse the trial court's order denying the petition unless the parent establishes that the court abused its discretion. (*Ibid.*)

""""The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."' [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) Where, as here, the court concludes that the party with the burden of proof failed to carry its burden, the question is not whether substantial evidence supports the judgment, but whether the evidence compels a finding in favor of the appellant as a matter of law. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.) Here, it does not.

In reviewing the court's decision in this case we bear in mind that at the time of the hearing A.M. and H.M. had been residing with their foster parents for more than two years—well beyond the 12-month maximum for reunification services for children who were under three years of age when they were removed from the custody of their parents. (§ 361.5, subd. (a)(1)(B).) Furthermore, once it has been determined that reunification services should be terminated, the focus shifts to the children's need for permanency and stability. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) Our Supreme Court made it clear in *In re Jamson O.* (1994) 8 Cal.4th 398, 414, that the disruption of an existing psychological bond between dependent children and their caretakers is an extremely important factor bearing on a section 388 motion. The court has also held that time is of the essence to young children like A.M. and H.M. when it comes to securing a stable, permanent home for them; prolonged uncertainty is not in their best interest. (*In re Josiah Z.* (2005) 36 Cal.4th 664, 674.) "'There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current 'home,' under the care of his parents or foster parents, especially when such uncertainty is prolonged.'" (*Ibid*; quoting *Lehman v. Lycoming County Children's Services Agency* (1982) 458 U.S. 502, 513-514.)

Thus, even if all of Father's recently resumed drug tests were negative (a fact not supported by the record) this fact alone did not, as a matter of law, require the court to find that the resumption of family reunification services or home placement would be in the children's best interests especially given Father's history of sporadic testing, inconsistent visitation and lack of interest in the children's development.

8

## DISPOSITION

The orders appealed from are affirmed.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

MILLER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9